| 72 | 133 |
|----|-----|
| 77 | 282 |

</div>

[No. 9743. In Bank.—March 16, 1887.]

## BERNARD CANNON, APPELLANT, v. THOMAS HANDLEY ET AL., RESPONDENTS.

DEED—ESCROW—DELIVERY. — A deed delivered to a third person to be held by him until the performance of a specified condition, and then to be delivered to the grantee, is an escrow.

ID. —GRANTOR CANNOT REVOKE—PERFORMANCE OF CONDITION. —A deed delivered as an escrow cannot be revoked by the grantor, but will take effect upon the performance of the condition on which it was delivered. Upon such performance, the depositary becomes the custodian of the grantee, holding the deed for him, and his possession as custodian is the possession of the grantee.

ID. —CONTRACT FOR SALE OF LAND—TIME OF PAYMENT—TENDER. —On the 8th of December, 1883, the plaintiff and certain of the defendants entered into a contract for the sale of the land in controversy. In pursuance of the contract, the defendants executed a deed of the land to the plaintiff, and deposited the same with a third person, to be by him delivered to the plaintiff upon the payment of the purchase price. No time for the payment was fixed by the contract. The plaintiff immediately took possession of the property, by direction of the grantors, and on the 11th of December, 1883, tendered the purchase price to the cus-

todian of the deed. *Held*, that the deed was an escrow, and that the tender of the purchase price was made within a reasonable time, and was sufficient without being kept good.

ID. — SUBSEQUENT PURCHASER WITH NOTICE — TRUST — LEGAL TITLE. — A subsequent purchaser from the grantors with notice of the prior deed is bound by all the equities of the plaintiff, and holds the legal title in trust for him.

ID. — STATUTE OF FRAUDS. — An oral contract for the sale of land, accompanied by the delivery of a deed therefor in escrow, is not within the statute of frauds.

ID. — AUTHORITY OF DEPOSITARY NEED NOT BE IN WRITING. — The authority of the custodian of a deed to hold the same as an escrow, and to deliver it upon the performance of a stipulated condition, need not be in writing.

APPEAL from a judgment of the Superior Court of Santa Cruz County.

The facts are stated in the opinion of the court.

*Charles B. Younger*, and *J. M. Lesser*, for Appellant.

*Burke & Hall*, for Respondents.

The COURT.—This case comes before this court upon an agreed case under section 1138, Code of Civil Procedure. The facts agreed on are as follows: On the 8th of May, 1882, John J. Handley, Jr., and Catharine Handley were the owners in fee-simple and in possession of a lot of land situate in the city of Santa Cruz, known as lot five (5), in block No. two (2), and on that day executed a mortgage on the same, with other property, to the Santa Cruz Bank of Savings and Loan, as security for the payment of the sum of eighteen hundred dollars, maturing on the eighth day of May, 1885, with interest at the rate of ten per cent per annum. The bank aforesaid, on the fifth day of February, 1883, for value received, assigned the note and mortgage to Elbert Austin, who on the 8th of December, 1883, was the owner of the securities above mentioned. On the —— day of March, 1883, John J. Handley, Jr., took out a policy of insurance for three hundred dollars on one of the buildings

on the lot above mentioned, against loss or damage by fire, payable to himself in case of loss, and also a policy of insurance for eight hundred dollars on another of the buildings on said lot, against loss or damage by fire, payable as the other policy. About a fortnight prior to December 8, 1883, John J. Handley, Jr., proposed to plaintiff's wife to sell said lot for eleven hundred dollars. Mrs. Cannon reported this proposal to plaintiff, who examined the lot, and told his wife that he would purchase said lot of land at that price, and that she could purchase it for him at the price above named. The plaintiff is and has been a laboring man for years, and at home only nights and on holidays.

On the 8th of December, 1883, John J. Handley, Jr., and Catharine Handley entered into an oral agreement with plaintiff's wife for the sale and conveyance of said lot of land; that in this transaction of purchase plaintiff's wife was acting for him (plaintiff), a fact of which said Handley was ignorant until the drawing of the deed, when she instructed him to make the deed to plaintiff as grantee for the sum of eleven hundred dollars, to be paid to said Austin on said mortgage; that Austin at the same time agreed to release said lot from the lien of the mortgage on the payment of eleven hundred dollars on the indebtedness evidenced by the note and mortgage aforesaid. In pursuance of the above agreement of sale, John J. Handley, Jr., and Catharine Handley, on the 8th of December, 1883, signed, sealed, and duly acknowledged a certain deed in writing dated on that day, purporting to grant, bargain, sell, and convey such lot of land to plaintiff, the sum of eleven hundred dollars being therein stated as the consideration. This deed was drawn for the grantors by defendant Cox, who was then and there paid therefor by them. This deed was then and there left and deposited by the grantors with said Cox for delivery by Cox to the grantee therein, upon the payment of the said eleven hundred

dollars to Cox for said Austin; but no definite time was agreed upon or stated when the purchase-money should be paid or the deed delivered. It was, however, known and understood by the parties that plaintiff's wife had $303 on deposit in the Hibernia Savings and Loan Society in San Francisco, and that said last-named sum would be collected by the bank of Santa 'Cruz County, and applied towards the payment of said sum; that this would take several days, and that plaintiff's wife would deliver her Hibernia Society's pass-book to the bank of Santa Cruz County on December 10, 1883.

At the same time that this deed was deposited with Cox, said Austin signed, sealed, and acknowledged a release of this lot from the lien of the mortgage, and delivered this release to Cox, to be by him delivered upon the payment to him (Cox) of the said eleven hundred dollars. At the same time, John J. Handley, Jr., with the consent of the insurance company, indorsed on each of the policies above mentioned, and signed an assignment to plaintiff of all his interest in said policies, and all advantage to be derived therefrom, and then and there delivered the policies to A. J. Hines, to be delivered to plaintiff at the time of the delivery of said deed.

On the morning of December 10, 1883, plaintiff's wife delivered to said bank of Santa Cruz County her pass-book of the society above mentioned, together with an order on the society to collect the sum of $303, and directed that money to be applied towards the payment of said $1,100, and applied to said bank to borrow the balance of said $1,100, but no agreement to loan was made by the bank. On the morning of December 11, 1883, she stated to Cox that she had heard that the father of John J. Handley, Jr., had some claim to said property, and instructed Cox not to forward the order and pass-book for collection until she knew about the title to the lot purchased.

On the 8th of December, 1883, and after the delivery

of the deed to said Cox, the grantors in the deed delivered the key of the door to the house on the lot to the plaintiff's wife, and told her to take possession of the premises. The house was then unoccupied. On the evening of the day last named, plaintiff was informed by his wife what had been done in relation to said premises, and he approved of what had been done, and the key was then delivered to plaintiff by his wife. On December 9, 1883, plaintiff unlocked the door of said house, went through it and examined it, and again locked the door, and has ever since had possession of the key. On December 10, 1883, plaintiff's wife, by direction of plaintiff, placed a clock and two chairs in the house, and left them there. On the next day plaintiff entered the house and barred all the doors on the inside, except the door to which he had the key, and then locked the door and retained the key in his possession.

On the 10th of December, 1883, John J. Handley, Jr., and Catharine Handley executed and acknowledged a deed dated on that date, purporting to grant and convey said lot to defendant Thomas Handley, a brother of John J., the consideration therein expressed being eleven hundred dollars. This deed was drawn by said Cox, and was delivered to defendant Handley on the 10th of December, 1883, by the grantors, and the above sum was paid by said Handley to the grantors. Handley, Jr., then paid this sum to Cox for Austin. Cox then delivered the release above named to said Handley, Jr., who immediately caused the same to be recorded in the office of the county recorder of Santa Cruz County. The deed to Thomas Handley was on the 11th of December, 1883, recorded in the office of said county recorder. Defendant Handley, prior to the 10th of December, 1883, and to the making, signing, execution, and delivery of the said deed from the Handleys to defendant Handley, and to the payment of any of the purchase-money by him, had notice of the entire transaction between plaintiff and said

Handleys, but did not then know that the key to one of the buildings on the lot had been delivered to plaintiff's wife, or that she had, as stated above, put a clock and two chairs in said house. At the time of the execution of the deed above named to defendant Handley, the grantors therein then and there ordered and directed Cox not to deliver the first-mentioned deed to plaintiff, and at the same time requested Cox to deliver that deed to him, which Cox refused to do.

On the 11th of December, 1883, Cox informed Mrs. Cannon that the Handleys had executed to Thomas Handley a deed purporting to convey the said lot of land, and that he had received the money for Austin as above stated. On the 12th of the same month, plaintiff offered and tendered to Cox the sum of eleven hundred dollars, and demanded of him that he deliver to plaintiff the deed above mentioned deposited with him, and Cox refused and still refuses to deliver this deed to plaintiff, or any one for him, and still retains it in his possession.

On the night of December 14th, Thomas Handley broke open the door of said house above mentioned, and took forcible possession of the premises, and removed therefrom the clock and two chairs placed there by plaintiff, and ever since has been in possession of said lot of land. On the 12th of the same month, defendant Handley served on plaintiff a written notice that plaintiff deliver and surrender the possession of said lot to him.

The rights of the parties are to be determined on the above state of facts.

It clearly appears that Cannon was a purchaser of the lot in question from the Handleys, John J., Jr., and Catharine; for the agreed price of eleven hundred dollars. There is no indefiniteness in the contract. No time was fixed for the payment of the money. The money was then to be paid in a reasonable time. The contract was entered into on the 8th of December, 1883,

on which day a deed of conveyance of the lot sold was drawn up, with the plaintiff's name inserted as grantee, as agreed on, and the Handleys as grantors, and deposited with defendant Cox, to be by him delivered to the plaintiff on the payment to him by plaintiff of eleven hundred dollars for one Austin. Austin held a mortgage on the lot, which he was to release from its lien on the payment of the sum aforesaid, who on the day of the date of the deed executed and deposited with Cox a release, duly executed by him, of the lot from the lien above mentioned, to be delivered by Cox on the payment to him (Cox) of the sum above mentioned. It will be further observed that an assignment of the policies of insurance mentioned in the case was drawn up, signed, and delivered to one Hines, to be delivered to plaintiff at the same time that the deed was delivered to him. Further, the possession of the property was delivered by the Handleys to plaintiff, and he actually took possession of the same by direction of the grantors, and kept possession of it by taking possession of a building on it, and retaining possession of the key thereof, which had been handed to him, through the medium of his wife, by the vendors.

Here, then, was a valid contract, certain in all its parts, partly executed and performed by delivery of the property sold, and a deed perfect in every respect executed by the grantors to the vendee, and placed in the hands of defendant Cox, to be delivered by Cox to plaintiff on the payment of the purchase-money. That plaintiff took possession, and possession was delivered to him by the grantors in pursuance of the contract, cannot, we think, be doubted. The deed was delivered as an escrow to Cox, and he so held it. He was to hold it, and deliver it to the vendee as soon as he paid the purchase-money. The payment of the purchase-money was the condition on which the deed was to be delivered by the depositary. This makes the deed an escrow, which

name is applied to a deed or other instrument delivered to a third person, to be held by him until the performance of a specified condition, and then to be by him delivered to the grantee. (3 Washburn on Real Property, 5th ed., 583; Abbott's Law Dictionary, tit. Escrow.)

We cannot concur in the view that Cox was the mere agent of the vendors, and held the paper as such, being bound to deliver the paper to the vendors when demanded of him by them. He was to hold it, and deliver it to the vendee when the money was paid; and the vendee was to make payment to Cox, and not to his vendors; and further, to make payment to Cox for Austin, and not for his vendors. Cox held the release as an escrow, also to be delivered to Cannon when the purchase-money was paid to Cox. The question is so clear that further discussion would darken instead of elucidating it.

The deed being then delivered as an escrow, it is no longer *revocable by the vendor*, but it will take effect whenever the condition has happened or been complied with on which it is to be delivered. (*Millett* v. *Parker*, 2 Met. (Ky.) 608, 616.) In this case the court said of a deed delivered as an escrow: "It cannot be revoked by the party who makes it, and he in whose favor it is made is entitled to it whenever the condition is complied with by which it becomes absolute." In *Shirley* v. *Ayers*, 14 Ohio, 308, it was held that the depositary of an escrow was as much the agent of the grantee as of the grantor. The court said: "He is as much bound to deliver the deed, on performance of the condition, as he is to withhold it until such performance." From this it would clearly follow that the grantor cannot recall the deed after the delivery as an escrow; and when the condition is complied with by the grantee, he is absolutely entitled to it. The Ohio Supreme Court in the case of *Shirley* v. *Ayres*, above cited, held that, inasmuch as the depositary of the escrow was

the agent of the grantee as well as grantor, the deed takes effect the moment the condition. is performed, without any formal delivery into the hands of the grantee.  In other words, it may be said, when the condition is performed, the depositary becomes the custodian of the grantee, holding the deed for him, and this possession as such custodian is the possession of the grantee.  We think this rule is based on sound principles, and should be upheld.

The order by the vendors (the Handleys) to Cox, on the 10th of December, not to deliver the deed to Cannon, had no effect to alter the relation of the parties. The vendors had no right to revoke the deed, or take it from the possession of Cox.  The offer by Cannon, on the 11th of December, to pay the eleven hundred dollars to Cox, and his refusal to deliver the deed, was an offer of compliance with the condition on which the deed was to be delivered.  The plaintiff then became entitled to it.  Cox then had it, and as between them, would still hold it for the plaintiff, on payment of the money.  The offer and tender of the money was within a reasonable time.  The contract was made on the 8th of December, 1883, and the money was offered and tendered on the twelfth day of the same month.  No stress is to be laid on the fact that it was known to and understood by the parties that plaintiff's wife had $303 deposited in the Hibernia Savings and Loan Society, which would be collected by the bank of Santa Cruz County, and applied *pro tanto* to the payment of the purchase-money, any further than it bears on the question of time within which the money was to be paid by plaintiff.  Plaintiff was not bound to use this specific fund so deposited with the society.  Payment could be made with any other money.  All that was required was payment of the eleven hundred dollars.  This sum of money was actually offered and tendered by plaintiff to Cox, as above stated.  The fact that the wife of plaintiff, on hearing

that the father of John Handley, Jr., had some claim to the lot sold, instructed Cox, on the 11th of December, 1883, not to forward her order and pass-book for collection until she knew about the title to the lot purchased, interposes no obstacle to plaintiff's recovery here, as he actually did offer to pay, and tendered the money in payment, on the twelfth day of December, within a reasonable time.    The tender was made with promptitude.

Nor was it necessary to keep the tender good. · (*Washburn* v. *Dewey*, 17 Vt. 92; *McDaneld* v. *Kimbrell*, 3 Iowa, 335; *White* v. *Dobson*, 17 Gratt. 262.)   The money was to be paid when the deed was delivered.   It would be unjust to require the plaintiff to keep the tender good, which is usually done by paying the money into court, when the deed is withheld from him, and when, as in this case, he is by violence deforced from the possession of the lot sold to him.   Under proper circumstances he may be required to pay interest on the money.

Thomas Handley, defendant, with full notice of all the facts of the sale and purchase by Cannon, as above stated, on the 10th of December, 1883, bought the land of the vendors of plaintiff, received from them a deed conveying the lot in controversy, and paid one thousand one hundred dollars to Cox for Austin; then received from Cox the release above mentioned, which he caused to be recorded on the eleventh of the same month.   On the twelfth of the same month, defendant Handley served on plaintiff a written notice that plaintiff deliver and surrender possession of said lot to him, and in the darkness of the night of the 14th of December he broke open the door of the house on the lot, made a forcible entry on the plaintiff's possession, and took possession of the premises, and ever since has been in possession of the land.

The circumstances having greatly changed since the contract was entered into, and Cox having received the money for Austin, and delivered the release to defend-

ant Handley, it may be that the plaintiff was in doubt to whom the money was to be paid, and therefore did not offer to pay to any one since the tender to Cox. As Handley (defendant) is a purchaser with notice, he is bound by all the equities of the plaintiff; and conceding the legal title remained in the vendors until the deed was actually delivered by Cox, and that it passed to the defendant by the deed executed to him, he (defendant Handley) holds it for the plaintiff, and is bound to convey to him. We are of opinion that defendant Handley holds the legal title in trust for the plaintiff, to be conveyed to him as hereinafter directed.

The plaintiff would have a right to be restored to the possession which was taken from him by force by Thomas Handley, and defendant must be directed to surrender possession to the plaintiff. The plaintiff will also be entitled to have an account from Handley, defendant, of the value of the use and occupation while he has been in possession of the land, and plaintiff must pay interest on eleven hundred dollars, the purchase-money, at the rate of seven per cent per annum, from the 12th of December, 1883, until paid; or, at plaintiff's option, the interest on the purchase-money may be regarded as liquidating the value of the use due by defendant, and no account need then be taken. The plaintiff will pay the purchase-money into court for defendant Handley, as he has become the purchaser from the vendors of plaintiff of the lot in suit, and the court will direct it to be paid to defendant above named. There is in the agreed statement of facts a provision in these words:—

"It is expressly agreed by the parties hereto that the facts herein admitted are to be taken by the court subject to all legal objections to their competency, relevancy, and admissibility, where the nature of the evidence necessary to establish said facts is apparent on the face of said statement, and the same shall be admitted or excluded,

in whole or part, as the court may determine, after hearing objections thereto."

This would seem to be a provision outside of the statute. The statute (Code Civ. Proc., sec. 1138) permits the parties to agree upon a case containing the facts upon which the controversy depends, " and present a submission of the same to any court which would have jurisdiction if an action had been brought. . . . . The court must thereupon [i. e., the case agreed] hear and determine the case, and render judgment thereon as if an action were depending." The parties must agree on the facts, and such agreed facts are the facts on which the case is to be determined. It might well be doubted whether the court on an agreed statement, with such a provision in it as the one above quoted, should not refuse to hear the case at all, or, if hearing it, disregard the provision.

But waiving this, we proceed to determine the question. It is said the contract was oral, and should not be enforced. But the deed is a note or memorandum in writing of the contract, and subscribed by the party charged, and this satisfies the statute. (Code Civ. Proc., sec. 1973; Civ. Code, sec. 1624, subd. 5.) Here it is signed by the party to be charged, and there is mutuality. (*Worrall* v. *Munn*, 5 N. Y. 229; *Rutenberg* v. *Main*, 47 Cal. 213.) In *Cagger* v. *Lansing*, 47 Barb. 421, the question is decided, and properly decided, that the deed is sufficient evidence to take the case out of the statute of frauds. So held under the statute of New York, which is substantially the same as that in force in this state.

But it is said there was nothing in writing authorizing Cox to hold or deliver the deed. There is nothing in the statute which requires this to be in writing. The statute only requires a note or memorandum in writing as evidence of the contract. Nothing in it has reference to any arrangement for the delivery of the deed in escrow, or its subsequent delivery by the party so holding

it to the grantee.    The contract is fully provided herein by writing.

It cannot elude observation that the efforts made by the Handley vendors, and defendant Handley, to deprive the plaintiff of the benefit of his purchase were made with an alacrity which, though astonishing, was not commendable.    The contract with plaintiff was made on the 8th of the current month, the delivery in escrow, and the delivery of possession to plaintiff, were made on the same day, and plaintiff took possession on the 10th, and the tender of payment was made on the 12th.    Still the same vendors executed a deed to defendant Handley as purchaser with notice, and therefore a confederate with them in the object intended, on the 10th of the same month, and this last purchaser paid the purchase-money, recorded his deed, and took possession by violence on the 14th.    This activity was worthy of a better cause, and if exhibited in behalf of right, would be a vigilance which the law would aid.    But activity to defeat a right cannot command action in its favor.    The plaintiff is entitled to recover of defendant Handley his costs on appeal.

The judgment must be reversed, and cause remanded, with directions to the court to enter judgment in accordance with this opinion, with the provision inserted in the judgment that if the plaintiff does not pay the purchase-money (eleven hundred dollars) within twenty days after the entry of the judgment in the court below, that plaintiff shall take nothing under the judgment except his costs on appeal.

So ordered.