[Civ. No. 1422.  Second Appellate District.—January 6, 1914.]

## DORAN, BROUSE & PRICE (a Corporation), Respondent, v. BUNKER HILL OIL MINING COMPANY (a Corporation), Appellant.

ESCROW—WHAT CONSTITUTES—DELIVERY OF DEEDS TO BANK TO AWAIT DECISION OF COURT.—Where two parties deliver three deeds to a bank, the plaintiff delivering two and the defendant one of them, under an agreement that the plaintiff, thirty days after notice of the affirmance of a certain decision by the supreme court and upon delivery to him of the third deed with certificate of title, will pay one thousand dollars to the bank on the defendant's account, and that the bank will then deliver his two deeds to the defendant, and that in case of default by the plaintiff the bank will, on demand, deliver the three deeds to the defendant, but that in case the supreme court reverses the decision in question the bank will return the deeds to the respective parties, the transaction constitutes a delivery to the bank in escrow.

ID.—UNAUTHORIZED WITHDRAWAL OF DEEDS—DELIVERY UPON FALSE REPRESENTATIONS.—In such case the defendant has no right to withdraw any of the deeds before the expiration of the time fixed for the happening of the event, or the performance of the condition upon which they are to be delivered; and if by means of false representations he obtains possession of the plaintiff's deeds and withdraws them from the depositary, there is no valid delivery to him and he will be deemed to hold them and the property in trust for the plaintiff.

ID.—TRUST—ACTION TO ENFORCE—SUFFICIENCY OF COMPLAINT.—The complaint, in an action involving such transaction, which alleges such agreement and escrow, as well as the defendant's acts in wrongfully obtaining possession of the deeds, and prays that it be declared that the deeds and property are held by the defendant in trust for the plaintiff, as shown by the escrow agreement, is good as against general demurrer.

ID.—INTERPRETATION OF ESCROW AGREEMENT—DELIVERY OF DEEDS—
TITLE OF DEFENDANT.—It appears from the language of such escrow
agreement that it was the intention of the parties that, while the
defendant could not enforce specific performance of the contract
by compelling the plaintiff to pay the ten thousand dollars without
a title based upon a patent, he could, upon the decision referred to
in his favor being affirmed by the supreme court, without showing
title in fee vested in him, insist that the plaintiff should accept
the deed as conveying such title as the defendant possessed and
pay therefor the sum of ten thousand dollars, or, in the event of
his failure so to do, insist upon his right to have the deeds held
by the bank delivered to him.

APPEAL from a judgment of the Superior Court of Kern
County and from an order refusing a new trial.   Paul W.
Bennett, Judge.

The facts are stated in the opinion of the court.

W. B. Beaizley, and Flint, Gray & Barker, for Appellant.

Byron Waters, George L. Sanders, and Albert E. Dunning,
for Respondent.

SHAW, J.—Action to enforce an alleged trust.   Judgment
went for plaintiff, from which, and an order denying defend-
ant's motion for a new trial, it prosecutes this appeal on a
bill of exceptions.

Appellant insists that the court erred in overruling its
general demurrer interposed to the complaint, which, in sub-
stance, discloses the following facts: Both defendant and
plaintiff were corporations.   On August 28, 1903, they en-
tered into an agreement as follows:

"Instructions to the Crocker-Woolworth National Bank of
San Francisco.

"Herewith we beg to hand you quitclaim deed from E. A.
Doran, A. C. Brouse and Burton E. Green to the Bunker
Hill Oil Mining Company, dated August 28, 1903, herein-
after referred to as deed No. 1.

"A quitclaim deed from Moran, Brouse & Price, incor-
porated, to the Bunker Hill Oil Mining Company, dated
August 28, A. D. 1903, hereinafter referred to as deed No. 2,
and

"A deed from the Bunker Hill Oil Mining Company to Doran, Brouse & Price, incorporated, hereinafter referred to as deed No. 3.

"All of the above deeds cover the northwest quarter (N.W. ¼) of the southwest quarter (S.W. ¼) of section twenty (20), township twenty-eight (28) south, range twenty-eight (28) east, M. D. B. & M., situate in Kern County, California, and are delivered by the parties to said deeds to the Crocker-Woolworth National Bank (hereinafter designated as the bank) in escrow, subject to the following terms, conditions and instructions:

"Whereas, there is a certain suit or action pending in the superior court of Kern County, state of California, entitled 'Bunker Hill Oil Mining Company, plaintiff, *vs.* W. M. Clark et al., defendants,' affecting the title to the real estate hereinabove particularly described;

"Now, if the supreme court of the state of California should by final judgment affirm the decision already rendered by the superior court of Kern County, in favor of the Bunker Hill Oil Mining Company,

"(1) It is hereby mutually agreed, that Doran, Brouse & Price will, within thirty days after notice in writing shall have been served on said Doran, Brouse & Price that the supreme court of the state of California shall have affirmed the decision by final judgment, upon the delivery to them of deed No. 3 and certificate of title showing the title of the property to be vested in the Bunker Hill Oil Mining Company free and clear of all encumbrances, pay to the bank, on account of the Bunker Hill Oil Mining Company, the sum of ten thousand dollars ($10,000) in United States gold coin, said sum representing the purchase price of the above described real estate.

"(2) In the event of the decision of the supreme court being in favor of the Bunker Hill Oil Mining Company, and in the event of Doran, Brouse & Price having paid the ten thousand dollars, as above specified, the bank will deliver to the Bunker Hill Oil Mining Company deeds designated as Nos. 1 and 2, and to Doran, Brouse & Price deed No. 3, together with certificate of title above referred to.

"(3) In the event that the said Doran, Brouse & Price shall fail or neglect within thirty days after notice in writ-

ing shall be served on Doran, Brouse & Price that the supreme court of the state of California shall have affirmed the decision of the superior court of Kern County, state of California, in favor of the Bunker Hill Oil Mining Company, the plaintiff in the above mentioned suit, to pay or deposit with the bank the sum of ten thousand dollars ($10,000) in United States gold coin in full payment of the purchase price of the real estate hereinabove described, then and in that event said bank will deliver to the Bunker Hill Oil Mining Company, its successors or assigns, on demand, all three deeds designated above as Nos. 1, 2, and 3.

"In the event that the supreme court of the state of California shall *reverse* the decision of the superior court of Kern County, state of California, in favor of the Bunker Hill Oil Mining Company, the plaintiff in the above mentioned suit, the bank will then return deed No. 1 to Doran, Brouse and Green, deed No. 2 to Doran, Brouse & Price and deed No. 3 to the Bunker Hill Oil Mining Company, or the heirs, successors or assigns of any of the above mentioned parties.

"Dated San Francisco, Aug. 28, A. D. 1903.

"BUNKER HILL OIL MINING COMPANY.

"By J. W. Wright, Pres.

"Lany, Sec.

"DORAN, BROUSE & PRICE (Inc.).

"By Doran, Pres.

"Price, Sec."

And on said date deposited the deeds described in the agreement with a bank to be held by it and delivered pursuant to the terms thereof. On September 1, 1908, defendant served upon the plaintiff notice of the affirmance of the judgment, and stating that unless plaintiff paid the ten thousand dollars within thirty days defendant would apply to the bank for a delivery of the deeds. On September 25, 1908, defendant, for the purpose of defrauding plaintiff, by means of representations made to the bank, to the effect that plaintiff and defendant had agreed that the bank should deliver the deeds to defendant, and that plaintiff had relinquished all right or claim thereto, induced the bank to deliver to it the said deeds so deposited under the terms of said agreement; that such representations were false and untrue; that defendant does not now and never has held title

in fee to the lands described in said agreement and deeds, and it is not now and never has been able to deliver a clear title to said property; that defendant retains said deeds with the intent to defraud plaintiff, but in trust for it. The prayer of the complaint is that it be declared that the deeds are held by defendant in trust for and on behalf of plaintiff, and that defendant hold such title as it has in the property in trust for the use and benefit of this plaintiff to the extent of its interest therein, as shown by and in accordance with the escrow agreement hereinbefore set forth, and for general relief.

The transaction set forth constituted a delivery to the bank in escrow. (*Cannon* v. *Handley,* 72 Cal. 133, [13 Pac. 315]; *McDonald* v. *Huff,* 77 Cal. 279, [19 Pac. 499].) As appears by the paragraph of the agreement designated "3," defendant was entitled to a delivery of the deeds only in the event that plaintiff should fail or neglect, within thirty days after service upon it of the notice in writing therein prescribed, to pay or deposit with the bank ten thousand dollars. Notwithstanding this fact, defendant upon serving the notice of September 1, 1908, by means of false representations, obtained possession of the deeds and withdrew them from the depositary of September 25, 1908. Defendant had no right to withdraw from the depositary its own deed, much less the quitclaim deeds designated in the agreement as Nos. 1 and 2, before the expiration of the time fixed for the happening of the event, or performance of the condition upon which they were to be delivered. (*McDonald* v. *Huff,* 77 Cal. 279, [19 Pac. 499]; *Grove* v. *Jennings,* 46 Kan. 366, [26 Pac. 738]; 11 Ency. of Law, p. 344.) If it is conceded that since deed No. 3 from defendant to plaintiff was never delivered to the latter, by reason of which fact defendant was never divested of its title to the land, and hence as to the interest therein described no trust could arise in plaintiff's favor, it is equally clear that there was no valid delivery of deeds Nos. 1 and 2, which purported to convey to defendant the interest of plaintiff in the land; hence defendant, at least as to such interest, would be deemed to hold the same in trust for plaintiff. For the injury thus sustained, as shown by the complaint, plaintiff was entitled to appropriate relief. The court

did not err in overruling the general demurrer interposed to the complaint.

By its answer, containing much unnecessary matter that should be disregarded as surplusage, defendant, among other things, admitted the execution of the agreement, deposit of the deeds in escrow, and the giving of the notice of September, 1, 1908, as stated in the complaint, and alleged that at the time of entering into the agreement defendant was in possession of the lands, which were a part of the public domain, under a mineral entry as oil lands, which fact was known to plaintiff; that a judgment had been entered in defendant's favor by the superior court of Kern County in an action brought by one Clark against defendant to determine conflicting rights to such lands, from which judgment Clark had appealed to the supreme court; that prior to November 5, 1904, defendant procured a dismissal of the judgment so entered in defendant's favor and from which Clark had appealed; that on November 5, 1904, defendant caused to be served upon plaintiff a copy of the *remittitur* issued out of the supreme court showing the dismissal of said appeal, whereby plaintiff was notified of the final determination of said action in favor of defendant, a copy of which *remittitur*, together with an affidavit showing service thereof upon plaintiff on November 5, 1904, was, on the eighth day of December, 1904, served upon said bank as escrow-holder; that plaintiff did not within thirty days after the service of such notice, or at any other time, pay to said bank the sum of ten thousand dollars provided to be paid under the terms of said agreement; that at the time of depositing the deeds and agreement in escrow with the bank there was indorsed upon the envelope wherein the same were inclosed, and signed by both plaintiff and defendant, a memorandum as follows: "Notice of decision of supreme court acknowledged by Doran, Brouse & Price, to be filed with the bank to determine the maturity of this escrow." All of these allegations were conclusively proved and in substance found by the court to be true. The court further found that at no time did defendant furnish or present to plaintiff, or to the bank, any certificate of title showing that title to the property was vested in defendant free and clear of encumbrances, and that defendant did represent to the bank that plaintiff, since

it had not theretofore paid defendant or said bank the sum of ten thousand dollars, no longer had any interest in the subject matter of the escrow, by reason of which fact defendant was entitled to a delivery of the deeds, and that notwithstanding plaintiff's protest made to the bank, to the effect that defendant had failed to comply with its part of the agreement in that it had failed to furnish such certificate of title, and in disregard of such failure so to furnish the same, said bank did surrender and deliver the deeds and agreement to defendant. As a conclusion of law, the court found that plaintiff was entitled to have the deeds so deposited in escrow remain undisturbed until thirty days after defendant had tendered to plaintiff a good and sufficient deed conveying, free and clear of encumbrance, the title in fee simple to the property in question, together with certificate of title showing same to be vested in the defendant in fee simple, free and clear of encumbrances; that notwithstanding such fact, defendant unlawfully obtained from the escrow-holder the said deeds in contravention of the rights of plaintiff under the terms and conditions of such escrow. The correctness of this conclusion, predicated upon the findings referred to, depends upon an interpretation of the terms of the contract.

It is apparent that the trial court construed the agreement as requiring defendant, as a condition of withdrawing the deeds, to furnish to plaintiff a certificate showing title in fee to be vested in defendant free and clear of all encumbrances. In our opinion, this interpretation is not warranted by the language used in the agreement. As we view the contract, there was no promise on the part of defendant to furnish a certificate of title, and no promise on the part of plaintiff to pay the ten thousand dollars, *unless* it was furnished. Under the provisions of paragraph designated "1," the obligation on the part of the plaintiff to pay the ten thousand dollars was upon the condition that defendant performed the acts therein specified, none of which, however, did defendant promise or assume any obligation to perform, the agreement in this respect being unilateral. Paragraph 2, having reference to and predicated upon the performance of acts on the part of defendant as specified in paragraph 1, and upon the doing of which an obligation would be imposed upon plaintiff to pay the sum specified, further provided that

upon the making of such payment by plaintiff the bank should deliver to it the deed and certificate of title specified in paragraph 1. Defendant, however, did not perform the conditions specified as a prerequisite to compelling plaintiff to pay the purchase price. Under these circumstances, plaintiff being free from obligation to make the payment, defendant invoked the provisions of paragraph 3 under which, upon complying with the terms thereof, plaintiff was required to either pay the ten thousand dollars or have the deeds delivered to defendant. It thus appears that by the terms of the agreement two distinct rights were conferred upon defendant: 1. It might, by complying with the provisions of paragraph 1, since plaintiff promised to pay the ten thousand dollars upon defendant doing the acts therein mentioned, impose upon plaintiff an obligation to pay the sum specified, for the recovery of which an action would lie against it; and, 2. Waiving such right by failure to perform the conditions therein contained, and plaintiff by reason of such nonperformance being free from any obligation to pay the ten thousand dollars, defendant might proceed under the terms of paragraph 3 whereby it could, by giving the notice therein specified, require plaintiff to pay the ten thousand dollars within thirty days from the service of such notice, or, in the event of plaintiff's failure so to do, rightfully demand from the bank a delivery of the deeds to which, by reason of such default on the part of plaintiff, it was entitled. The difference in the two provisions as to plaintiff is that in the one case performance by defendant of the conditions specified in paragraph 1 imposed upon plaintiff a *legal obligation enforceable* in an action at law to pay the ten thousand dollars, while in the other it *had the option* to pay or have the deeds withdrawn. In other words, since defendant did not do the acts specified in paragraph 1, the transaction, under the notice given on November 5, 1904, constituted a simple escrow whereby defendant was entitled to a delivery of the deeds by the bank for failure of plaintiff to pay ten thousand dollars within thirty days from service of the notice. Not only was it the duty of the bank, under the terms of paragraph 3, to deliver the deeds to defendant upon demand therefore, accompanied with proof of service of the notice, but any doubt as to such duty is removed by the memorandum

indorsed on the envelope containing the deeds and signed by the parties, to the effect that proof of service made upon plaintiff that the supreme court had affirmed the Clark judgment should mature the escrow.

We think it clearly appears from the language of the contract that it was the intention of the parties that, while defendant could not enforce specific performance of the contract by compelling the plaintiff to pay the ten thousand dollars without a title based upon a patent, it could, upon the Clark judgment in its favor being affirmed by the supreme court, without showing title in fee vested in it, insist that plaintiff should accept the deed as conveying such title as it possessed and pay therefor the sum of ten thousand dollars; or, in the event of its failure so to do, insist upon its right to have the deeds held by the bank delivered to it.

This view of the contract renders it unnecessary to discuss the technical points urged by appellant for a reversal. Since defendant was not required to furnish to plaintiff a certificate of title, or give the notice alleged to have been given on September 1, 1908, it follows that the findings of its failure to furnish such certificate and the withdrawal of the deeds in less than thirty days after the giving of said last mentioned notice—being findings as to immaterial matters—are insufficient to support the judgment.

The judgment and order denying defendant's motion for a new trial are reversed.

Conrey, P. J., and James, J., concurred.