[Civ. No. 3741. Second Appellate District, Division One.—December 28, 1921.]

## F. L. FEISTHAMEL, Respondent, v. R. M. CAMPBELL, Appellant.

[1] ESCROW — CONDITIONAL DELIVERY OF WRITTEN INSTRUMENTS.— Wherever parties, under valid consideration, make delivery of instruments, such as deeds, certificates of stock, or securities of other sorts, conditioned upon the payment of money or the rendering of further consideration to the grantor or vendor, they may, as a part of the transaction, create a valid escrow.

[2] OPTION — CONSIDERATION — ENFORCEABILITY.—An option agreement, supported by sufficient consideration, is an enforceable contract, notwithstanding its unilateral character, and the question of want of mutuality of remedy does not affect it.

[3] ESCROW—CORPORATION STOCK—OPTION TO PURCHASE—ENFORCEABILITY.—An option to purchase corporation stock deposited with an escrow-holder is enforceable.

[4] ID.—STATUS OF ESCROW-HOLDER.—Where an option to purchase stock is deposited in escrow, the depositary becomes a trustee under an express trust, and when the vendee has rendered the required consideration into the hands of the trustee, the escrow-holder becomes the agent of the vendee in the holding of the stock and the vendor loses his right of property therein.

[5] ID.—WRONGFUL DELIVERY BY DEPOSITARY—TITLE.—The wrongful delivery by an escrow-holder contrary to instructions under which he holds the property will confer no title, particularly as against those who take with notice.

[6] ID.—PERFORMANCE BY VENDEE—REMEDY.—Where an option to purchase stock is deposited in escrow, and the vendee performs the required condition by payment, the remedy of the vendee is against the depositary to compel delivery of the stock.

[7] ID.—ASSIGNMENT BY VENDEE—TENDER BY ASSIGNEE—RECOVERY OF STOCK—SUBSEQUENT PURCHASER FROM ASSIGNOR WITH NOTICE. Where vendees made an assignment of their option, and the assignee made a tender of the required sum to the escrow-holder, the remedy of the assignee to compel delivery of the stock followed the same into the hands of a subsequent purchaser from the assignor with knowledge of the assignee's rights.

[8] ACTION FOR RECOVERY OF STOCK—JUDGMENT—PAYMENT OF MONEY DEPOSITED IN COURT—FAILURE TO INCLUDE ORDER—INSUFFICIENT

---

6. Liability of escrow-holder or depositary for wrongful delivery, note, Ann. Cas. 1915A, 277.

GROUND FOR REVERSAL.—Where the judgment in an action for the recovery of such a stock certificate was based upon the theory that the tender had been properly made and had been kept good by the deposit of the sum in court, and by reason of the judgment for the plaintiff the defendant was entitled to the money, the judgment will not be reversed for the failure to include an order for the payment or delivery of the money by the clerk, since the defendant is at liberty to apply to the clerk for the payment thereof, and in the event of refusal, to apply to the court for an order directing payment. (Opinion of supreme court on denial of hearing.)

APPEAL from a judgment of the Superior Court of Los Angeles County. Albert Lee Stephens, Judge. Affirmed.

The facts are stated in the opinion of the court.

Frank F. Oster for Appellant.

Goodwin & Morgrage for Respondent.

JAMES, J.—Plaintiff was awarded judgment. for the recovery of a stock certificate representing certain corporate shares, and defendant has appealed therefrom.

On the 13th of May, 1918, R. A. Moore was the owner of 1,900 shares of the capital stock of the Grant Tool Company. On that day he deposited a certificate representing the full number of shares mentioned with a banking corporation, for the purpose of having the same held in escrow subject to conditions which he stated in writing. These instructions so addressed to the bank directed that the escrow-holder deliver the certificate to M. M. Gilchrist, William J. Coady, John Grant, and A. J. Campbell, *or their assigns,* "or to any or either of them for the other or others," upon the payment to the bank for the vendor, within two years from the date of the instructions, the sum of $2,000, payable, as the document recited: "Five hundred dollars any time within one year from the date hereof, and the sum of five hundred dollars every six months thereafter until said sum of two thousand dollars shall have been paid. After the payment of said first installment deferred payments are to bear interest at the rate of 6% per annum." The writing concluded with the following paragraph: "These instructions are given in recognition of an option granted by me

for a valuable consideration in an agreement with the parties herein mentioned contemporaneously herewith.'' At the time the certificate was deposited and the escrow completed all of the persons named in whose interest the option to buy had been given were the owners of a large amount of stock in the same corporation. On the 18th of March, 1919, the plaintiff purchased from Gilchrist 6,365 shares of Grant Tool Company stock, and from Coady 8,112 shares, at two dollars per share. The agreement of purchase covering both of these interests was in writing and contained in one document. On the same day the plaintiff purchased from Grant 10,700 shares of the same stock and from A. J. Campbell 1,700, also the interest of both of these parties in a certain block consisting of 1,500 shares of the same stock then being held as collateral security for payment of a debt theretofore incurred by the vendors. This purchase from Campbell and Grant was also evidenced by a writing expressed in a single document and the purchase price therein agreed upon was the sum of one dollar per share. Each of the documents hereinbefore referred to contained a clause expressing an assignment of the interest of the vendors in the option to purchase the Moore stock which had been, as before stated, made the subject of the escrow deposit. The assignment was expressed in the following language: ''First party . . . does sell and assign to the third party all his right, title and interest in and to a certain option to purchase 1,900 shares of the capital stock of said Grant Tool Company for the sum of $2,000, which said option is given by one Moore to the first party.'' On the twenty-sixth day of March, 1919, the plaintiff here, the holder of the assignment in the option rights from Gilchrist, Coady, Grant, and A. J. Campbell, presented the written assignment to the trust officer of the bank in charge of the escrow of the Moore stock, made tender of $2,000 and requested that the stock be delivered to him. The trust officer declined to deliver the stock, stating that he did not deem the assignment sufficient, and demanded that plaintiff secure a power of attorney from the four persons who had assigned their interest. Plaintiff at a later date, through his attorney, made another tender and a more formal demand upon the bank, but at that time the stock had already been delivered, under circumstances which we will now state:

The evidence shows that one Dent had for several years been a friend and acquaintance of Grant and A. J. Campbell. He was not an attorney at law, but had been consulted by Grant and had advised the latter in a business way respecting transactions affecting the stock of the Grant Tool Company, and particularly during the transaction which resulted in the sale by Grant and Campbell of their stock to plaintiff. It will be noted that while Coady and Gilchrist received two dollars per share for their stock, Grant and Campbell secured but one dollar, that being the price also, approximately, of the stock held in escrow under the Moore option. We gather from the record that when Grant and A. J. Campbell concluded the sale of their stock to plaintiff, they had not learned that plaintiff was paying Coady and Gilchrist a higher price, and that, when they did learn of this, they became dissatisfied, with the result that certain action was taken which is now narrated: A few days after the making of the sale by Grant and A. J. Campbell to plaintiff, a power of attorney signed by the two persons named was executed in favor of Dent. This power of attorney authorized Dent particularly to "demand, receive receipt and cause to be paid for 1900 shares of capital stock of the Grant Tool Company, a corporation, evidenced by Certificate Number 34, and now in the custody of the Citizens Trust and Savings Bank, under its escrow No. 1180, or make any and all demands necessary or proper to be made to recover any and all corporate stocks or stock, moneys or money, to which we, or either of us, may be entitled by reason of our relationship as stockholders in the Grant Tool Company, a corporation. . . . " The inference is plainly indicated that Dent had learned from the bank that it would act upon a power of attorney from the parties mentioned in the escrow instructions. Dent, armed with this power of attorney, proceeded to look up Moore, the owner of the escrowed stock, and the latter, after some consultation with counsel as to his rights, went to the bank and accepted payment for the stock. The bank determined that the power of attorney presented by Dent authorized it to release the stock from escrow, and delivered it over. In view of the fact that one of the contentions of appellant is that the evidence was insufficient to show that defendant Campbell was not an innocent purchaser, without notice of any

rights of the plaintiff, we shall pay particular attention to the evidence as it disclosed the conduct of Dent in connection with the acts of the defendant. Defendant Campbell was the father of A. J. Campbell and the father-in-law of Grant. As soon as Dent had secured the power of attorney mentioned, he wrote a letter, stating in effect that he believed he could secure 1,900 shares of stock of the Grant Tool Company at the same price mentioned in the escrow instructions to Moore, and offered to sell the same to defendant. This letter he took to defendant's place of business in the city of Los Angeles where, although he stated that he was well acquainted with defendant, he entered into no conversation respecting the stock at all, but delivered to him the letter, saying that he would return after a while. Dent insisted that he at no time disclosed to the defendant the situation respecting the sale of the Grant-Campbell interests, or respecting any assignment having been made of the option rights (although he admitted that he had seen and read that assignment). According to the testimony of both Dent and the defendant, Dent returned to the defendant's place in about an hour and the defendant told him that he would take the stock. On cross-examination the latter testified that at the time he knew nothing of the condition of the Grant Tool Company, as to its finances, as to the property it possessed, or, in fact, nothing at all respecting matters which might affect the value of the stock. He denied in general terms that he knew of the sale of the Grant-Campbell stock to the plaintiff, but admitted in the course of his examination that Grant's "little girl," his granddaughter, had said that her father had sold out. At any rate, defendant immediately prepared certified checks covering the amount which Dent explained to him was required, and these were deposited with Dent's counsel to await delivery of the stock. After the first checks were deposited, Dent found that there were other charges that Moore insisted should be paid, including his, Moore's attorney's fee. He returned to the defendant and explained the situation, whereupon the defendant furnished the added amounts of money. After the stock was procured from the bank, it rested in the hands of Dent's counsel for a period of about six months. In July, Dent proceeded to take action in the matter of the sale of the stock of Grant and Campbell to the plaintiff.

Under date of July 23d he drew a notice addressed to the plaintiff, expressing a tender of $12,400, and demanded that there be returned to Grant and A. J. Campbell 12,400 shares of stock, it being asserted in that notice that the same had been obtained from vendors by fraud. This notice he signed "A. J. Campbell, John Grant, By Henry G. Dent, their attorney in fact." The $12,400 was actually tendered to the plaintiff under this demand and it is significant to note that the money was furnished by the defendant here. We will not attempt to make any further statement of the evidence as affecting the connection of the defendant with the purchase of the escrowed stock. The record, by a great wealth of circumstances, is ample to show that the defendant was not, in his dealings respecting this stock, disassociated from Grant and A. J. Campbell. The trial court was not obliged to take the bare statement of the interested witnesses who sought to impress the defendant with the character of an innocent purchaser, as against a set of cogent and connected circumstances plainly indicating otherwise. (Code Civ. Proc., sec. 2061.)

[1] Appellant advances the contention that there was no "escrow" as that term is made to describe the legal situation following the deposit of documents in the hands of a third person. It is argued that, in order to have constituted the depositary an escrow-holder, with the obligation to protect the interests of the persons in whose favor the deposit was made, there must have been an agreement on the part of the latter to purchase—in other words, that the agreement should have been one of sale and purchase, and not a bare option. A number of authorities are cited which sustain the general proposition that where deeds are deposited with a third person to be delivered upon compliance with some specified conditions, there must, in order to make a good escrow, be a corresponding agreement on the part of the proposed beneficiary binding them to buy. Whatever may be the earlier holdings, it seems now to be established that wherever parties, under valid consideration, make delivery of instruments, such as deeds, certificates of stock, or securities of other sorts, conditioned upon the payment of money or the rendering of further consideration to the grantor or vendor, they may, as a part of the transaction, create a valid escrow. [2] An option agreement, supported by sufficient

consideration, is an enforceable contract, notwithstanding its unilateral character, and the question of want of mutuality of remedy does not affect it. "If mutuality, in a broad sense, were held to be an essential element in every valid contract, to the extent that both contracting parties could sue on it, there could be no such thing as a valid unilateral or option contract, or a contract evidenced by a subscription paper, or a contract to enforce a reward offer, or a guaranty, or in many other instances readily put in ordinary business affairs. . . . An option, supported by a consideration, furnishes another illustration of a contract which is valid, notwithstanding the lack of mutuality. It is no objection to the validity of the contract that the holder of the option is under no obligation to exercise it." (6 Ruling Case Law, p. 687, and decisions shown in footnote. See, also, *Pittsburgh Vitrified P. & B. Co.* v. *Bailey,* 78 Kan. 42, [12 L. R. A. (N. S.) 745, 90 Pac. 803].) The case of *Clark* v. *Campbell,* 23 Utah, 569 [90 Am. St. Rep. 716, 54 L. R. A. 508, 65 Pac. 496], is cited as expressing the opposite view. In that case there was not involved the question as to enforceability of an option contract based upon a valuable consideration, nor whether, under such a contract, there might be made a valid escrow. The court expressly stated that no consideration appeared to have been given for the option, and the main point involved was as to the right of a vendee to the dividends which had been declared upon the stock between the date of the option agreement and the time when the right to purchase was finally exercised. [3] The case of *Bailey* v. *Security Trust Co.,* 179 Cal. 540 [177 Pac. 444], holds directly that an option to purchase stock deposited with an escrow-holder is enforceable. Sections 1053 and 1057 of the Civil Code are referred to in that decision as authorizing such deposits to be made, both of deeds affecting real property, and personal property. Summing up its conclusions affecting the various matters involved, the court stated that to hold otherwise would be to put an end "to the common and convenient practice, which has of recent years found general acceptance in the business world, of consummating transfers of real and personal property through deposits in escrow." Once a valid deposit in escrow has been made, the escrow-holder becomes the agent of both parties. Presuming a case like this, of an option to purchase

stock, the escrow-holder is the agent of the vendor for the purpose of holding the stock and receiving the purchase price if it be paid by the second parties, and it has the obligation also to return the stock at the end of the time fixed, where the vendees have not made payment of the amount agreed upon. The vendor in such a case has no right to withdraw property from the deposit until the expiration of the time stated. As an agent of the proposed vendees, the escrow-holder has then the duty to see that the property remains in his hands until the expiration of the full time fixed in the directions of the vendor, and to deliver the property to the vendees upon the condition as to payment being satisfied. [4] By the making of such an escrow deposit, the depositary becomes a trustee under an express trust, and when the vendees have rendered the consideration required into the hands of the trustee, the escrow-holder becomes the agent of the vendees in the holding of it, and the vendor loses his right of property therein. We quote further from Ruling Case Law, volume 10, and of the text as shown on page 640, which is sustained by authorities cited thereunder: "The more logical position and that approved by numerous authorities is that upon the happening of the event or the performance of the condition upon which manual delivery should be made by the depositary to the grantee, although not in fact physically delivered to him, a deed theretofore in escrow becomes *ipso facto* the deed of the grantee in whom the title vests, and that thenceforth the depositary or holder is regarded as the mere agent or trustee of the grantee." (See *Cannon* v. *Handley,* 72 Cal. 133 [13 Pac. 315].) And in the same text (Ruling Case Law), at page 642, it is announced that a court of equity may be resorted to to compel delivery of an instrument placed in escrow, where the conditions are fulfilled and the depositary refuses to deliver. It is further stated that the remedy is against the trustee and not against the grantor, adding: "If a conveyance is deposited in escrow and the grantor is about to withdraw, or permit the withdrawal of, the instrument before the expiration of the time during which it was to remain on deposit, and has conveyed to a purchaser with notice, a court of equity will grant relief, and, if necessary, an injunction keeping the title *in statu quo* and placing the grantee in the same situation that the

vendor agreed he should be, by giving the right to perform the condition and to receive the deed according to the terms of the contract.'' [5] It is uniformly held to be the law that the wrongful delivery by an escrow-holder contrary to instructions under which he holds the property will confer no title, particularly as against those who take with notice. [6] We have already suggested that, upon the performance of the condition required of a vendee, the escrow-holder or trustee no longer holds the property as the property of the vendor, but for the vendee; and that the remedy of the vendee in such a case is against the trustee or escrow-holder to compel delivery of the subject of the deposit. There was in this case a wrongful delivery of the certificate of stock to Dent. The escrow-holder had due and sufficient notice that neither Grant nor A. J. Campbell had any further interest in the escrow deposit, but that they had by a sufficient instrument in writing assigned all of that interest to the plaintiff here. While the stock was still in possession of the trustee, the plaintiff tendered the money required to complete the purchase, exhibited the instruments of assignment, and demanded that the property be delivered to him. Immediately upon the performance of these acts, plaintiff became entitled to the stock and became entitled to his remedy to compel the depositary to turn over the document. We have indicated, too, that there was sufficient evidence to show that A. J. Campbell made the purchase, or pseudo purchase, with knowledge of the facts concerning the conditions surrounding this particular stock. [7] The vendees having available to them the remedy to compel the depositary to turn over the stock, we think that remedy followed the stock into the hands of the person who wrongfully became possessed of it. It was necessary that the defendant be named as a party in order that the stock be recovered, and we do not think that it was indispensable that the escrow-holder should have been included as a defendant. The action as first brought included as defendants the vendor of the stock, the escrow-holder, Grant, A. J. Campbell, and Henry G. Dent, as well as this defendant. The respondent by a demurrer, which he interposed to the original complaint, objected, among other grounds, that there was a misjoinder of parties defendant, and that he was improperly

included as a party. His and other demurrers filed were sustained, when the plaintiff amended, making defendant here the sole party against whom relief was demanded, and setting out the facts by sufficient allegations concerning the making of the option contract and escrow agreement, as well as the subsequent action taken, as has been hereinbefore stated. We do not perceive any detriment which respondent has suffered by reason of his having been made the sole defendant in the case. The case in its evidence bears strongly the impression, more potent than a mere suspicion, that Dent, in securing the stock from the escrow-holder, was acting on behalf of A. J. Campbell and Grant, for whose benefit the defendant here advanced the money with which to satisfy the vendor's demand. This suggestion is given weight by the fact that under the same power of attorney Dent later made a written demand on behalf of his principals, Grant and A. J. Campbell, for the return of the other stock purchased by the plaintiff from these men, and that, again, the defendant here advanced the money which was tendered in connection with that demand. The plaintiff not only tendered to the escrow-holder the money required, but continued to offer to pay the amount and deposited the same into court to await the result of the trial. This case, as the record presents it, shows few equitable features which can properly be invoked in aid of the defendant's position; on the other hand, the plaintiff appears to have endeavored only to secure what his agreement with Grant, A. J. Campbell, and Moore entitled him to, and which, had not the escrow-holder disregarded the plain language of the instructions under which the deposit was held, would have been rendered to him without the necessity of resorting to this suit.

The judgment is affirmed.

Conrey, P. J., and Shaw, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 23, 1922, and the following opinion then rendered thereon:

THE COURT.—The petition for a rehearing in this court is denied.

[8] In answer to the suggestion in the petition that the judgment of the court below should have included an order for the payment or delivery by the clerk of the $2,000 deposited in court in pursuance of the tender previously made by the plaintiff to the defendant, and for the purpose of keeping such tender good, we deem it proper to say that the failure to make such order would not be in any event cause for the reversal of the judgment. That judgment was based upon the theory that the tender had been properly made and had been kept good by the deposit, and that by reason of the judgment for the plaintiff the defendant would be entitled to the money. The defendant is at liberty to apply to the clerk for the payment thereof and if the clerk refuses, he may apply to the court for an order directing such payment.

Shaw, C. J., Waste, J., Richards, J., *pro tem.*, Lawlor, J., Shurtleff, J., Sloane, J., and Wilbur, J., concurred.