R. L. AYLWARD COAL CO. v. BIRDSEY.

1. APPEAL AND ERROR—FAILURE OF CODEFENDANT TO APPEAL—ASSUMPTIONS.

In corporate purchaser's action against its former dispatcher and corporate seller of gasoline for use in plaintiff's delivery trucks for amount of rebate which seller had already paid once to dispatcher, where dispatcher did not appeal from judgment against both defendants it must be assumed he improperly retained moneys to which plaintiff was rightfully entitled.

2. CONTRACTS—UNILATERAL OFFER—ACCEPTANCE—REBATE ON QUANTITY PURCHASE OF GASOLINE.

An agreement, bilateral in form, but never executed as a bilateral contract, whereby corporate defendant was to give a rebate if a certain quantity of gasoline per year were purchased from it, *held*, a valid unilateral offer which was ac-

cepted by plaintiff, as corporate purchaser, by making various purchases, hence plaintiff was entitled thereunder to rebate which had been paid to, and appropriated by, plaintiff's dispatcher who had arranged for the purchases, having had actual or apparent authority so to do, even though plaintiff's president was not aware of the arrangement.

3. CORPORATIONS—QUANTITY PURCHASE OF GASOLINE—REBATES— ESTOPPEL.

Corporate seller of gasoline, which obtained substantial benefits from its authorized salesman's plan of giving rebate for quantity purchase of gasoline, is estopped to deny provisions of plan for giving such discounts on purchase price.

4. CONTRACTS—PERFORMANCE—REBATES TO CORPORATE PURCHASER.

Agreement between corporate plaintiff and corporate defendant whereby latter was to give former a rebate or discount for quantity purchase of gasoline was not performed by latter in sending check for rebate to defendant dispatcher, plaintiff's former employee who had made the arrangement, where such check was made payable to the dispatcher, and applied to his personal use, although invoices for the gasoline were made out to plaintiff as purchaser, deliveries made to its premises, and its checks sent to defendant in payment thereof.

5. CORPORATIONS—AUTHORITY OF AGENT TO RECEIVE REBATE CHECKS —QUESTION FOR JURY.

Whether corporate plaintiff's dispatcher had implied or apparent authority to receive discounts or rebates for quantity purchase by plaintiff of gasoline from corporate defendant *held*, a question of fact for jury under evidence presented.

6. SAME—PERFORMANCE OF CONTRACTS—BURDEN OF PROVING AGENT'S AUTHORITY.

In action by corporate purchaser of gasoline to recover amount of rebates which defendant seller had given plaintiff's dispatcher where such defendant relied upon payment to the dispatcher as performance of its obligation to plaintiff, defendant had burden of showing dispatcher had authority to accept the rebate checks for plaintiff.

Appeal from Wayne; Shaffer (John C.), J., presiding. Submitted June 15, 1939. (Docket No. 103, Calendar No. 40,494.) Decided September 6, 1939.

Action by R. L. Aylward Coal Company, a Michigan corporation, against George Birdsey and Sinclair Refining Company, a foreign corporation, for discounts due under contract for purchase of gasoline. Verdict and judgment for plaintiff. Defendant Sinclair Refining Company appeals. Affirmed.

*Henry C. L. Forler,* for plaintiff.

*Bruno L. Blinstrub,* for defendant.

Butzel, C. J. Plaintiff corporation, the R. L. Aylward Coal Company, was in the business of selling coal in the city of Detroit. To operate its delivery trucks it required large quantities of gasoline which it had been in the habit of purchasing in the open market. The gasoline was ordered by defendant George Birdsey, who was employed by the company as a dispatcher. In addition to keeping the trucks supplied with fuel, Birdsey's duties included hiring truck drivers, inspecting the equipment, controlling operation of the trucks, and supervising deliveries of coal. In January, 1935, one Charles C. Anderson, a salesman for defendant Sinclair Refining Company, approached Birdsey in an effort to secure plaintiff's business for his firm. Birdsey told Anderson that he could buy gasoline for 1½ cents per gallon cheaper than the Sinclair price. Anderson then explained that if the coal company signed a contract to buy a certain quantity of gasoline over a year period, a discount or rebate of 1½ cents per gallon would be given. Birdsey, however, refused to sign a written contract and thereupon Anderson explained that it was merely a formal arrangement to satisfy the home office of the refining company and that he would sign it for the coal company himself. At the end of a contract form dated January

2, 1935, Anderson wrote "Aylward Coal Company" and below it, "George Birdsey." Under the latter name appears the following designation: "Sole Prop. Purchaser," which, Anderson testified, was not affixed by him but was apparently added later by someone in the office of the Sinclair Refining Company.

Gasoline was subsequently furnished plaintiff by Sinclair at regular prices. At intervals checks for the discount or rebate, in amounts depending upon the gallonage ordered, were sent from Sinclair Refining Company's main office and made payable to Birdsey. These checks, aggregating $533.26, were cashed by Birdsey and the proceeds retained by him for his personal benefit. He testified that he treated them as personal gratuities to him and for this reason did not surrender them to plaintiff. He left plaintiff's employ in September, 1936, at which time plaintiff's president, Mr. Luyckz, first discovered that the Sinclair Refining Company had been allowing a discount and that Birdsey had been appropriating the discount checks. Suit was commenced against both defendants for $571.46, and judgment was entered on the verdict against both of them. Defendant Sinclair Refining Company alone prosecutes this appeal.

As a result of the unappealed judgment against Birdsey, it must be assumed that he improperly retained moneys to which plaintiff was rightfully entitled. The present issue is whether appellant, having sent its checks to Birdsey, may still be held for the discount by plaintiff company which actually paid for the gasoline on which the discount was allowed.

Appellant contends that its only obligation to pay a discount to plaintiff must have been created by

the contract of January 2, 1935, and that this purported contract is a complete nullity since it lacked mutual assent and did not bind the plaintiff to order any gasoline at all, not having been signed by an authorized representative of plaintiff company. This contention must be rejected. Although the agreement was bilateral in form, it was never executed as a bilateral contract. It was, however, a valid unilateral offer by appellant which was accepted by plaintiff's various purchases of gasoline. The assent of plaintiff was signified by its orders. The fact that its president may not have known of the discount provision is not material since Birdsey knew of it, and the parties agree that he had either actual or apparent authority to arrange for the purchases of gasoline. While plaintiff was not bound to give any orders to appellant, none of its officers or agents having so contracted, appellant became bound to pay the agreed rebate when the appropriate amounts of gasoline were purchased from it. Its liability became fixed and absolute as it made its sales. This the company itself acknowledged in January, 1937, by sending a check directly to plaintiff for discounts on gasoline sold during the latter half of 1936, after Birdsey had severed his connection with plaintiff. To speak of mutuality of obligation in an agreement of this sort is a misconception. Cf. *Cooper* v. *Lansing Wheel Co.,* 94 Mich. 272 (34 Am. St. Rep. 341); *Feisthamel* v. *Campbell,* 55 Cal. App. 774 (205 Pac. 25); and see the analysis in 12 Am. Jur. p. 512.

What is more, it does not lie in the mouth of appellant to contest the regularity of the method of sale which was engineered by its own authorized salesman, and through which it continued to sell plaintiff large quantities of its product. Having ob-

tained substantial benefits from the plan adopted by Anderson, it is estopped to deny the provisions of that plan by which it obligated itself to pay discounts to its purchaser.

Admitting the existence of the obligation, appellant then claims that the payments to Birdsey constituted a full performance. It is beyond question that appellant knew that it was dealing with the R. L. Aylward Coal Company and not an individual. The corporation was named by Anderson in the "contract." Invoices were made out to the coal company as purchaser and the company's checks, signed by the treasurer, were sent in payment. Deliveries of the gasoline were made to plaintiff's premises for the use of its trucks. It is equally clear that Sinclair realized that the discount on the gasoline was to be paid to the company. It did in fact pay it to Birdsey under the mistaken belief that he was entitled to the checks because of some arrangement with his company or because it believed that the checks were being deposited to plaintiff's credit.

The sole remaining question, then, is whether this misapprehension was reasonable and induced by the action or inaction of plaintiff. Or, to put it otherwise, did Birdsey have authority, implied or apparent, to receive discount payments on the gasoline which he ordered? The evidence on this issue was conflicting. Anderson testified that he thought Birdsey was the general manager and denied Birdsey's statement that he had revealed his lack of authority to bind the company even in making a contract for a year's supply of gasoline. On the other hand, it was shown that Anderson obtained a Dunn & Bradstreet report on plaintiff shortly after the arrangement was entered into, which report did not disclose Birdsey to be an officer or authorized collection

agent of plaintiff. The discount checks were made payable not to the R. L. Aylward Coal Company nor to George Birdsey as agent or "sole proprietor" of the R. L. Aylward Coal Company, but simply to George Birdsey as an individual. Likewise, the reverse side of the checks indicated no indorsement by him to plaintiff's treasurer. There was no course of dealing between the companies which could have suggested that Birdsey had anything to do with the financial management of plaintiff's business. The question was submitted to a jury which found against appellant's contentions. We cannot say as a matter of law that appellant acted reasonably in assuming checks sent to Birdsey were being deposited with plaintiff's account. It had little or no basis for believing that Birdsey was authorized to receive company moneys in his own name and to deposit them for his own use and benefit. Without proof of the agent's authority to accept payment for his principal, appellant, who was bound to pay plaintiff, cannot plead payment to Birdsey as a discharge of its obligation. *Kornemann* v. *Monaghan*, 24 Mich. 36. See 2 Mechem, Agency (2d Ed.), § 2058.

Judgment for plaintiff is affirmed, with costs.

Wiest, Bushnell, Sharpe, Potter, Chandler, North, and McAllister, JJ., concurred.