[No. 6,912.—Department One.]

January 17, 1881.

## JOHN H. BOSTWICK v. P. D. McEVOY ET AL.

DELIVERY OF NOTE—ESCROW.—The delivery of an instrument in escrow-during the life-time of a party becomes absolute upon the happening of the condition after his death.

JOINT PROMISSORY NOTE—JOINDER OF PARTIES.—An action is maintainable in this State upon a joint promissory note against a surviving maker and the personal representative of a deceased maker.

AMENDMENT OF RECORD—CLERICAL ERROR.—A judgment may be amended after the adjournment of the term, where the record furnishes the data.

FORECLOSURE OF MORTGAGE—NOTE COMING DUE AFTER COMMENCEMENT OF SUIT.—In a suit for the foreclosure of a mortgage given to secure several promissory notes, some of which were not due at the commencement of the suit, the Court has jurisdiction—under § 728, C. C. P.—to decree a foreclosure of the mortgage to satisfy all of them.

APPEAL from a judgment for the plaintiff, and from an order denying a new trial, and from an order modifying said judgment, in the Third District Court of the City and County of San Francisco. THORNTON, J.

A petition for hearing in bank was filed in this case after judgment, and denied.

*J. C. Bates,* for Appellants.

*F. C. M. Du Brutz,* for Respondent.

McKEE, J.:

On the fourth day of November, 1873, one Kimbell and others sold and conveyed to the defendant, P. H. McEvoy, the tract of land in controversy in this case, for the sum of $9,393.80. To secure payment of the purchase money, John McEvoy joined the defendant P. H. in the execution of four promissory notes, three of them for the sum of $2,398.45 each, and the fourth for the sum of $2,198.45. The first was payable one year, the second two years, the third three years, and the fourth four years, after date; and P. H. McEvoy secured their payment by giving a mortgage upon the land.

But the notes were not absolutely delivered, because at the time of the transaction of purchase the land was one of sev-

eral tracts of land which were embraced in a deed of trust, given on the seventeenth of April, 1872, by the vendors— then the owners of the land—to certain persons in trust to sell and convey for the purpose of paying off a large sum of money which the trustors had borrowed from the San Francisco Savings Union—a corporation existing under the laws of the State and doing business in the city of San Francisco. And when the defendant, P. H., purchased the land it was incumbered by this deed of trust, and he bought with full knowledge of its existence and subject to it. But to secure himself against it, he and Kimbell, the payee of the notes, entered into the following agreement in writing :

"WEBB'S LANDING, February 23, 1874.

" It is hereby agreed, that four certain notes and the mortgage to secure the payment of the same, the said notes being three for $2,398.45 and one for $2,198.45, one payable on November 4, 1874, second on November 4, 1875, third on November 4, 1876, and fourth, for $2,198.45, payable on November 4, 1877, and bearing interest at ten per cent. per annum, shall be left in the hands of W. H. Glasscock until the payee, A. G. Kimbell, shall relieve from any and all incumbrances up to the fourth of November, 1873, certain premises described in a certain deed, dated November 4, 1873, and made by said Kimbell, George D. Roberts, and William S. McMurthy, to the said P. H. McEvoy.

" In duplicate.                               A. G. KIMBELL.
                                             " P. H. McEvoy."

Under this stipulation P. H. McEvoy placed the notes in the hands of the depositary, to be held as escrows. Kimbell delivered to him the deed, and the mortgage to Kimbell was recorded in the recorder's office of Contra Costa County—the county where the land was situated—by whom, does not appear from the record of the case. But the mortgagor went into the immediate possession of the land under the deed which he had obtained from the mortgagee and others, and has since continued in the undisturbed possession of the same.

In March, 1875, while the promissory notes were held as escrows, John McEvoy died. Letters of administration of his estate were granted to P. H. McEvoy, who has since con-

tinued to act as administrator.  On the fourteenth of August, 1876, Kimbell presented the notes, verified according to law, to the administrator as a claim against the estate.  The claim was rejected by the administrator, and properly so, because at that time the condition upon which the notes had been delivered as escrows had not been fulfilled; and no liability attached to the estate upon them.  But on the twenty-sixth day of November, 1876, P. H. McEvoy had accepted a conveyance of the land from one who, under an argeement between himself and one of the vendors, had acquired the title to the land at the sale of it by the trustees under the deed of trust; and the depositary of the notes, upon the conveyance being made to McEvoy, delivered the notes to Kimbell, who, after P. H. McEvoy had accepted the conveyance of the title under the trust deed, presented the notes to the administrator for allowance as a claim against the estate, but the administrator again indorsed them rejected, and the question arises, whether any liability attaches to the estate of John McEvoy upon the notes.  It is contended that the estate is not liable, because there was no delivery of the notes by John McEvoy, either absolutely or as escrows.

As a general rule, a negotiable promissory note, like any other written contract, has no legal inception or valid existence until it has been delivered in accordance with the purpose or intent of the parties.  Delivery is an essential part of the making or execution of the note; and if this be subsequent to the date, it takes effect from the delivery and not from the date; but the promise to pay relates to the date if referred to, and becomes binding and operative when the note is delivered.  An operative delivery must be unconditional, and not a delivery as a mere escrow; but a delivery as an escrow becomes absolute when the condition on which it was made transpires.

Now, the notes in controversy were the joint notes of P. H. and John McEvoy.  After they were signed they were left in the hands of the former for delivery.  He did deliver them as escrows, and although the latter was not himself personally present at the delivery, yet his assent to it must be inferred. For when one of two or more makers of a joint promissory note delivers it as an escrow, or absolutely, he is presumably

the constituted agent of his co-makers for that purpose, and
the delivery made by him is the act of all.  Besides, it is
alleged in the complaint, and not denied in the answer, that
both the makers of the notes agreed with the payee that the
notes were to be delivered as escrows, and that they were,
pursuant to that agreement, actually delivered by one of
them to the person selected by all as custodian of the notes.
This agreement, it is true, was reduced to writing in the form
of the memorandum which was signed only by one of them.
Yet that did not change the existing verbal agreement be-
tween all the parties as to the delivery of the notes, nor affect
the delivery, as the act of both, made by the one who signed
the written agreement.

But John McEvoy died before the condition on which the
notes were delivered had transpired, and the question arises
whether there was an absolute delivery by or in his behalf
which will bind his estate.

An original delivery can not be made by or on behalf of a
dead man.  But when the condition on which an original de-
livery made in the life-time of a party transpires, the condi-
tional delivery becomes absolute, and the absolute delivery
takes effect against the contracting parties from the date of
the delivery of the contracts as escrows, notwithstanding the
death of one of the contractors before the happening of the
condition.  " If a man delivers a bond as an escrow to be
delivered on condition performed, before which the obligor or
obligee dies, and the condition is afterwards performed, here
there could be no second delivery, yet it is the deed of the
obligor from the first delivery, although it was only inchoate,
but it shall be deemed consummated by the performance of
the condition."  (Parsons, C. J., in *Wheelright* v. *Wheelright,*
2 Mass. 454; S. C., 3 Am. Dec. 66; *Hatch* v. *Hatch,* 9 id. 310;
S. C., 6 Am. Dec. 67; *Bodwell* v. *Webster,* 13 Pick. 414, 415.)
So, says Coke : " If the grantee dies between the first delivery
and the deed becoming absolute, the deed is good, for there
was *traditio inchoata* in the life of the parties, *sed postea con-
summata existens* by the performance of the condition takes
its effect by force of the first delivery, without any new de-
livery."  (*Perryman's Case,* 5 Co. 84 *b; Peck* v. *Goodwin,*
Kirby, 64.)

Upon the happening of the condition upon which the notes were to be delivered, the delivery then became absolute, notwithstanding the death of one of the makers of the notes before the fulfillment of the condition, and the notes became operative and valid as legal subsisting claims against his estate. Being presented to the administrator and rejected on the twenty-sixth of November, 1876, this suit was brought within time, and the claims are not barred.

As to the defendant P. H. McEvoy, it is claimed that the deed of trust transferred the title to the land, and that the trustors, at the time of the sale and conveyance to the defendant, had no title in the land to convey, and the notes were therefore without consideration and void.

Of course, in an action on a mortgage by an assignee who received the notes secured for it, for value, after they became due, this defense may be made. Any defenses open to the maker in a suit on the notes may be made use of in the action upon the mortgage; for the debt is the principal thing and the mortgage the incident; and the legal rights and remedies upon the debt become fixed upon the incident. If, therefore, the notes were given without consideration, they are void in the hands of the plaintiff, who received them after they became due. But promissory notes given for a legal or equitable title to land are not void for want of consideration, especially where, as in this case, the defendant purchased the land knowing that it was subject to the deed of trust given by his grantors, and against which he protected himself by a written stipulation for the discharge of the trust, and, at the same time, delivered the notes to be held as escrows until the trust was discharged. It is true, that the deed of trust transferred the title to the land, yet it was held by the trustees only to secure payment of the debt due by the trustees to the beneficiaries, and, in this respect, the trust deed resembled a mortgage. But it was also a conveyance, and a mortgage is not, until foreclosure and sale; yet, as a conveyance, it does not enable either the trustees or the beneficiaries to recover possession of the land, for a trustor, like a mortgagor, is entitled to the possession of the land until a sale and conveyance of it in pursuance of the terms of the trust. Therefore, one who merely holds the title in

trust, as security for debt, can not maintain ejectment against the trustor or his assigns to recover the land. (*Tyler* v. *Granger*, 48 Cal. 259.) And if the trust shall be satisfied, before a sale and conveyance under the deed, it is the duty of the trustee to reconvey the title. If he fails or refuses, equity will compel him; or it will, in any case, undertake the supervision of the execution of the trust.

As therefore the equitable title to the land was in the trustors at the time of the purchase, the defendant, in purchasing it, acquired the title of his vendors, subject to the condition that the deed of trust should be satisfied by them. The condition was fulfilled by the sale and conveyance by the trustees and the transfer of the title to the defendant by the purchaser at that sale; for if the trust had been satisfied before a sale and conveyance, pursuant to its terms, and the trustees had reconveyed the title to the trustors, the condition upon which the notes were to be delivered would have been fulfilled, and the defendant, by his original deed, would have obtained the title of his grantors, which he bargained for; and the same result follows where title passes by a sale and conveyance under the trust deed directly to the defendant who accepted the deed. By acceptance, he received the land free and clear of the incumbrance which was upon it at the time he purchased it, and against which he protected himself by the agreement between him and his vendors. Whatever implied covenants were contained in his original deed were satisfied by the conveyance to him of the trust title, which he accepted. Time was not of the essence of the contract between him and his vendors; and any delay in the fulfillment of the condition upon which he delivered his notes for the purchase money as escrows, he himself overlooked when he accepted the deed transferring to him the title under the deed of trust, without objections. Nor can any inquiry be made in this suit as to the title of the land itself. It is sufficient that he mortgaged whatever estate he acquired, as security for payment of the notes given for the purchase money; and he subsequently acquired the title which he bargained for, and this title inures to the benefit of his mortgagee. The object of this suit is to obtain a sale of his estate in the land, and the application of the proceeds

of the sale to the satisfaction of his notes. (*San Francisco* v. *Lawton,* 18 Cal. 473.) In such an action it is not proper to try questions relating to the title of the land.

In the foreclosure proceedings we discover no error. The findings are sustained by the evidence. It was not error to allow counsel fees. The mortgage provided for them, and the Court had authority under the statute to allow them against the mortgagor. It is true, John McEvoy was not a party to the mortgage, and his estate is not liable for such fees; but no judgment for them was rendered against the administrator. The decree provides for a judgment against the mortgagor and the administrator for any deficiency which might remain after applying the proceeds of the sale of the mortgaged premises to the satisfaction of the amount due upon the notes and costs, including the counsel fees fixed by the Court against the mortgagor. The estate is thus relieved from the payment of counsel fees.

It is urged that the estate of a deceased maker of a joint promissory note executed by two or more, can not be joined as defendant with the surviving debtor or debtors in an action on the note. But there was no demurrer to the complaint on the ground of misjoinder. Such an action, however, is maintainable in this state, but any judgment recovered against the administrator must be made payable *de bonis testatoris.* (*Bank of Stockton* v. *Howland,* 42 Cal. 129.) In this case the judgment was not so entered in the first instance, but the Court below, upon suggestion, modified the judgment against the administrator by making it payable out of the estate of the deceased, in due course of administration. It is objected that this was done after the adjournment of the term, but the Court had power to make the amendment notwithstanding the adjournment of the term. A court, while it has physical control of its records, may amend its judgments or orders where the record furnishes the data by which to amend. (*Hegeler* v. *Henckell,* 27 id. 495.) In this case the necessity for the amendment was apparent upon the record.

It is also objected that one of the notes was not due at the commencement of the action. But it became due before the trial of the case and the rendition of judgment, and under Section 728, C. C. P., the Court had jurisdiction to decree a

foreclosure of the mortgage to satisfy all of them. (*Hawkins v. Hill*, 15 Cal. 500.)

Lastly, it is argued that John McEvoy signed the notes as a surety only, and that his death released him from all liability thereon. But the assumed relation does not appear upon the face of the notes, or from anything in the case. The point was not urged in the Court below. It is made here for the first time, without any basis of fact; for the answer of the defendants contains no such defense. If the relation existed and could be shown under Section 2832, C. C., as against the plaintiff, who received the notes upon the apparent character of each of the makers of the notes as a principal, it must be pleaded as a defense to entitle it to consideration.

Judgment and orders affirmed.

McKINSTRY and ROSS, JJ., concurred.