[Civ. No. 1736.   Second Appellate District.—July 15, 1915.]

MIRANDA C. ROGERS, an Incompetent Person, by Robert
S. Ewing, Her Guardian, Appellant, v. LINDA SCOTT
et al., Respondents.

DEED—ACTION TO SET ASIDE—TRANSFERS BY AGED PERSON TO INTIMATE
FRIEND—JUDGMENT SUPPORTED BY EVIDENCE.—In this action brought
for the purpose of securing a decree setting aside a certain deed of
conveyance of real property, and also certain instruments in writ-
ing purporting to transfer title to certain personal property, and
a contract signed by the alleged incompetent grantor and the de-
fendant which set forth the terms and conditions upon which the
alleged transfers were made, it is held that the evidence not only
shows that the grantor at the time of trial (four years after the
execution of the instruments and when she was of the age of eighty-
six years) was of an active mind, but that there was an entire ab-
sence of any showing of importunity made or practiced upon her
confidence by the grantee, who was her most intimate friend, and
immediate associate in the study of occult matters.

ID.—MENTAL CAPACITY—GREAT AGE.—Great age alone furnishes no pre-
sumption that the grantor was incapable of understanding the nature
of the transaction, or that she was incapable of resisting the alleged
occult magnetic power of the grantee.

APPEAL from a judgment of the Superior Court of Los
Angeles County.   Gavin W. Craig, Judge.

The facts are stated in the opinion of the court.

G. A. Gibbs, and J. W. Morin, for Appellant.

John A. Powell, and Hunsaker & Britt, for Respondents.

JAMES, J.—This action was brought for the purpose of
securing a decree setting aside a certain deed of conveyance
of real property; also setting aside certain instruments in writ-
ing purporting to transfer title to certain personal property,
and a contract signed by the alleged incompetent plaintiff and
defendant Linda Scott, in which contract was set forth the
terms and conditions upon which the alleged transfers were
made.   The conveyances of the property both real and per-
sonal, according to the tenor of the writings referred to, were
from the said Miranda C. Rogers to the said Linda Scott.   In

the second amended complaint, upon which issue was joined by the answer, it was alleged, in brief, that in 1908, Miranda C. Rogers was the owner of a large amount of real and personal property, the major portion of which had been devised to her by her late husband; that at the time of the filing of said second amended complaint, which was of the date the fifth day of April, 1912, said Miranda C. Rogers was of the age of 86 years; that after the death of her said husband she had been annoyed and disturbed by the actions of two certain men, one of whom, on behalf of certain relatives of her deceased husband, had attempted a contest in the matter of his estate, and the other of whom had annoyed her by making demands for money; that defendant Linda Scott was an intimate friend of said Miranda C. Rogers and as such had become the sole and confidential adviser of said Miranda C. Rogers concerning all her affairs; that on account of the annoyance and irritation occasioned by the persons who interfered in her affairs, and because of her great age, the mind of said Miranda C. Rogers, in December, 1908, had become weakened and easily worked upon, and that at or about said last mentioned date, it being reported that the persons who had been annoying the said Miranda C. Rogers had returned, the said Miranda C. Rogers requested the said Linda Scott that the latter take a deed of all the property of the former and hold the same until she should desire it back again; that pursuant to such suggestion the said Linda Scott took the plaintiff to her (Linda Scott's) attorney and there a deed of conveyance was drawn and executed, whereby title to said property was provided to become vested in the said Linda Scott, except a life interest therein which was reserved to said Miranda C. Rogers; that a bill of sale of articles of household furniture was also executed in favor of said Linda Scott, and that two checks, blank as to amount and signed by the said Miranda C. Rogers, were delivered to the said Linda Scott with the understanding that said Linda Scott should, upon the death of said Miranda C. Rogers, draw any and all moneys of Miranda C. Rogers which might be found on deposit in either of two certain banks. The general substance of the charging part of the complaint has been set forth in the foregoing. The judgment of the trial court was in favor of the defendants, from which an appeal has been taken by the plaintiff.

The evidence showed that Miranda C. Rogers had been married three times. Her last husband, Benjamin C. Rogers, died on or about the twenty-second day of February, 1903, in Los Angeles County, leaving a large estate, estimated to be of the value of between thirty-five thousand and forty thousand dollars. This estate was all received by Miranda C. Rogers. Prior to her last husband's death Mrs. Rogers had met defendant Linda Scott. She found the latter to be of a studious turn of mind and interested in delving into abstruse subjects, such as theosophy, spiritualism, etc. Mrs. Rogers testified that she (Mrs. Rogers) was "a student of everything that brings light to a higher life, no matter what it may be, theosophy or Christian Science, or spiritualism; not spiritualism *per se,* as we see it exhibited here in this city." Thirteen years prior to the date of the trial the two women met at a little gathering of people who were engaged in some philanthropic work concerning children. They immediately became acquainted and an intimate friendship resulted in consequence of their mutual tastes and inclinations. Mrs. Rogers had no relatives of her own blood and, as she testified, she was "the last of the family." She appears not to have had any affection or especial regard for any of her husband's relatives; in fact the natural inference to be drawn from all of the evidence exhibited in the record is that, because of the contest attempted to be made in the matter of her husband's estate by these relatives, her feelings toward them were not even of a neutral character. During the years immediately succeeding her husband's death Mrs. Rogers visited constantly with Mrs. Scott, and the latter in turn visited at the house of the former. Mrs. Rogers had expressed a purpose to leave her property upon her death to Mrs. Scott, and in September, 1905, had made a will which, after disposing of nine thousand dollars in legacies to members of her deceased husband's family, gave all of the rest and residue of her estate to Mrs. Scott, whom she appointed executrix without bonds. In December, 1908, the two women appeared at the office of an attorney at law of whom it was stipulated that his standing at the bar was "of the best." What occurred there was narrated on the witness stand by this attorney. He said that Mrs. Rogers at that time appeared to be a very "bright chatty lady" and came into his office pursuant to an appointment, accompanied by Mrs. Scott; that Mrs.

Rogers presented a will, dated in November, 1906, which she had executed, and asked for his opinion as to its being valid in the form in which it was drawn. This will provided that Linda Scott should have all of the property of the testator, and then contained this recitation: "My objects in placing all that I have at my death solely in the hands of Mrs. Linda Scott is this, namely: She fully understands the object and aim I have in view, and with the hope that I may take the initiative in said line of work." The attorney, as he testified, suggested that this clause was very vague in its attempt to express a tangible purpose, and discussed other means by which the intent of Mrs. Rogers might be carried out. We quote from a portion of the testimony of the witness: "She stated that her desire was to accomplish the result that Mrs. Scott should have all of her property upon her death and wanted to know whether a will such as this could be contested, and whether or not it was in correct form. I criticised the will. . . . She then said that Mrs. Scott and she were very close friends, companions, and wanted to know whether some other way could not be arrived at by which her wishes could be effectually carried out, and I think she said at that time . . . that Mrs. Scott was companion to her and would look after her in her advancing years if it was necessary, and provide for her and so forth, and she inquired whether some other matter could not be arrived at in addition to the will. I stated of course that a direct conveyance could be made, but she asked me would I indicate to her in what manner the will could be strengthened, and I told her that if her intention was that Mrs. Scott should have her entire estate when she deceased, all that was necessary to add in the will was to say so and to stop there and not to make use of these explanatory words. She asked me I think to make a rough draft of such a will as in my judgment would be effectual and she would keep it. This will she stated had been written by herself." The witness then stated that he prepared a pencil draft of a proposed will which left the entire estate of the testator to Mrs. Scott, and then that there was a discussion as to the matter of making a present conveyance of the properties of Mrs. Rogers to Mrs. Scott. The witness testified that he informed Mrs. Rogers that she could make a transfer and, if she desired, retain a life interest in the property; that he also told her that he could prepare such a docu-

ment, but that it had been his observation that such transactions frequently resulted in litigation between the parties where they afterwards changed their minds or the acquaintance had been broken off. "She said," he then testified, "that she wanted it fixed in such a way that it could not be successfully contested, and that Mrs. Scott would be assured of having what she left if she passed away before her, and said that their friendship was firm and strong, and that there would be no trouble of that sort between them. I told her I conceded it to be my duty to advise her in that way, as she was divesting herself apparently of all of her property, and if the transfer were legally made she never could recall it. And I think I referred to one or two cases, one that had been in the courts a short time previously, which had attracted my attention. I think I referred to that and she asked me to prepare the papers. . . . I prepared one or two instruments of transfer and they subsequently came in together at the date of the execution of these documents and they were executed and delivered." The witness testified that during all of this consultation Mrs. Scott sat by and listened and had very little to say, except to express a willingness to assume the duties outlined as proposed to be embraced in the terms of the contract which was executed contemporaneously with the instruments of transfer. The contract referred to provided that, in consideration of the transfer of the real property owned by Mrs. Rogers, and in which a life interest was reserved to Mrs. Rogers, Mrs. Scott as the grantee would during the life of Mrs. Rogers fully supply all the needs and wants of Mrs. Rogers and give her such care and attention as she might require, and fully support and maintain her; and that the cost of such support and maintenance, in the event it exceeded the income derived from the property conveyed, should be furnished by the said Linda Scott. In addition to the real property transferred, a mortgage, which had been given by the said Linda Scott to the said Miranda C. Rogers securing a loan of ten thousand dollars, was assigned or released, and in fact, all of the tangible property held or possessed by the said Miranda C. Rogers was at that time turned over to Linda Scott. The defendant Linda Scott was possessed of considerable property and means, and she testified that she had endeavored faithfully to carry out the terms of this contract and stood ready to fulfill all the obligations thereof by

her assumed. After this transaction was closed the parties continued the course of their friendship undisturbed for about three years. Mrs. Rogers was a believer in spiritualistic visitations, and not long prior to the commencement of this action claimed to have had a spirit vision of her husband who suggested that she erect some sort of a religious chapel for the free use of the public. She then determined to ask Mrs. Scott to return her property to her and wrote a letter accordingly. Mrs. Scott declined to accede to the request, and this action was then commenced. Nowhere in any of the testimony was it represented that Mrs. Scott had ever requested Mrs. Rogers to transfer to her any of the latter's property. Lacking the evidence of any direct suggestion of that kind, it must be that the plaintiff relies upon a claim of some occult magnetism or suggestive power possessed by Linda Scott which, when silently exerted, was persuasive over the mind of Miranda C. Rogers. Nowhere do we find it said in the testimony that Mrs. Scott even recommended to Mrs. Rogers that she divest herself of title to any of her property. There seems to be no doubt but that the friendship between the two women was of an unusually close and intimate character. It may properly be said, for the sake of considering the full force of all the testimony in connection with the claim of the plaintiff, that because of this intimate friendship a duty was cast upon Mrs. Scott to deal with Mrs. Rogers with all the care and scrupulous attention to fairness required of persons in that relation. We may go farther and say that it then became her obligation upon mere proof of the transaction had with her close friend, to assume the burden of showing the absolute good faith and unquestioned fairness of that transaction. This burden, viewing the typed record of the testimony, seems to have been fully discharged upon the part of Linda Scott. Not only was there shown an absence of any importunity made or practiced by Linda Scott upon the confidence of her trusting friend, but it was further shown that an attorney at law, as to whose high standing at the bar the plaintiff stipulated in open court, explained fully and carefully the effect of the transaction which Miranda C. Rogers consummated, and warned her in advance against the very thing that happened when he told her that sometimes friendships were broken and that then one of the parties, who might have placed control of his or her property

in the hands of another, would want to recede from that posi- . tion and take back that which they had at the prior time intended to dispose of irrevocably. Moreover, it nowhere appears that Miranda C. Rogers was a person of dull or impaired intellect; in fact, her mind appears to have been exceedingly active; her ideas clearcut and distinct, even when she testified at the trial at the advanced age of 86 years. The fact of her great age alone furnishes no presumption that she was incapable of understanding the nature of the transaction described, or that she was incapable of resisting the alleged magnetic effect of Linda Scott. (*Soberanes* v. *Soberanes,* 97 Cal. 140, [31 Pac. 910].) And as pertinent to the general subject here considered: *Field* v. *Shorb,* 99 Cal. 661, [34 Pac. 504]. There can be no question but that the consideration expressed in the contract was adequate to support the transfer of property which is here attacked. Counsel for appellant very frankly and fairly concede that the only point in the case is as to whether there was any substantial evidence to support the determination of the trial judge which was made in favor of the defendant, admitting that any conflict as to the facts shown by the testimony must be resolved in favor of the judgment. Not only, to our minds, was ample proof made upon which to sustain the judgment of the court, but there is very little forceful testimony which would justify any other decision to be made than that brought here for review.

The judgment is affirmed.

Conrey, P. J., and Shaw, J., concurred.