[Civ. No. 6165. First Appellate District, Division Two.—May 7, 1928.]

F. M. LAW et al., Respondents, v. TITLE GUARANTEE & TRUST COMPANY (a Corporation), Defendant; LEO H. NOLTE, Individually, etc., Appellant.

William M. Hiatt and Frederick Baker for Appellant.

Cunningham & Blackburn for Respondents.

THOMPSON (R. L.), J., *pro tem.*—This is an appeal from a judgment rendered in favor of plaintiffs in an equi-

table action decreeing delivery of an escrow deed to a portion of a certain Los Angeles lot to the grantees thereof, and quieting title thereto.

The appellant contends that (1) the grantor was of unsound mind; that (2) the deposit of the deed did not constitute an escrow; that (3) the conditions of the escrow were not performed; that (4) the escrow was revoked by the heirs of the grantor; that (5) the decree quieting title to the lot in question disregarded the validity of an existing mortgage lien, and that (6) the record is devoid of evidence of the value of the property or the adequacy of consideration for the purchase thereof.

The appellant's intestate, C. A. Nolte, was eighty-nine years of age, and resided in Los Angeles. He was the owner of that portion of lot 6 of the Amey tract of Los Angeles, which is involved in this action. October 12, 1923, the grantor procured Kells & Grant, his real estate agents, to prepare a written contract of sale of said lot to the respondents for the sum of $16,500, by the terms of which agreement the agents receipted for $500 to be applied upon the purchase price. It was provided that the purchasers should pay the sum of $8,250 in cash, and execute and deliver to the seller a note secured by mortgage on said lot for the further sum of $8,250. This note and mortgage were to be deposited upon the delivery of a deed of conveyance of said premises free of encumbrance, together with a certificate of title to be issued by an acceptable company. This agreement was duly signed by the agents, by the owner, C. A. Nolte, and was assented to by F. M. Law, representing the purchasers. By the terms of this contract the owner agreed to pay the agent $825 as commissions for consummating the sale, which sum was to be retained from the purchase price. Pursuant to this agreement, a note and mortgage for $8,250 were executed by the respondents and acknowledged October 23, 1923, at the office of Kells & Grant. A deed to the lot in question was duly executed by the owner and acknowledged in the office of said agents October 18th. These instruments, together with written escrow instructions signed by C. A. Nolte, were, at his instance, delivered to the defendant Title Guarantee & Trust Company, a corporation, at Los Angeles. With this title company the respondents deposited the balance of the pur-

chase price, to wit, $7,762, on November 13, 1923. These instruments were indorsed by Mr. Baker the escrow clerk of the trust company as follows: "Baker,— No. 504,561." The escrow instructions read:

"Los Angeles, Cal., October 12, 1923.
"Title Guarantee & Trust Company.

"I hand you herewith grant deed executed by C. A. Nolte to F. M. Law and Vera B. Law, on the following described property, . . . which you are authorized to use upon payment to you within 30 days from the date hereof for my account, the sum of $8,250, and a mortgage executed by . . . (the grantees) in favor of C. A. Nolte (reciting the terms of the note and mortgage). . . . Endorse interest on back of note to date of close of escrow. Said mortgage shall be first lien on the above described property. . . . Prorate rents as of date of close of escrow. Prorate taxes for the fiscal year 1923–1924. Pay your escrow charges, also charges for your guaranty of title and recording mortgage. Pay all encumbrances of record necessary to show title as above. Pay Kells & Grant $825 as commissions. Mail your check for the balance to me. In the event that the conditions of this escrow have not been complied with at the expiration of the time provided for herein, you are instructed to complete the same at the earliest possible date thereafter, unless I shall have made written demand upon you for the return of all the instruments deposited by me.

"(Signed) C. A. NOLTE."

"(Endorsed) Baker,—No. 504,561."

C. A. Nolte died November 16, 1923. Upon demand the trust company delivered the deed to this property to the appellant, C. A. Nolte. The deed was offered in evidence at the trial, and is now in the custody of the clerk of court.

We are of the opinion that the evidence in the present case supports the findings of the court to the effect that the grantor was of sound mind and capable of executing the deed in question. Evidently the appellant does not rely upon his charge of mental unsoundness of the grantor as a ground for reversal. This subject is not mentioned in his briefs, except by way of a recital of the facts wherein it is said that the grantor was a man of nearly ninety years of age, and was suffering from infirmities of body and mind which naturally resulted from extreme age. The alleged in-

competency of the grantor seems not to have been made an issue at the trial. The evidence of mental incompetency is meager indeed. One witness gave his opinion, without having been qualified as an intimate acquaintance, that for four or five months prior to his death, the grantor's mental condition seemed to be failing; that he had lapses of memory; was inclined to talk about spiritualism and lacked business ability. Upon the contrary, there was evidence that he always attended to his own business affairs, which were usually profitable to him. Neither the proof of an occasional lapse of memory nor the belief in spiritualism is proof of mental incapacity. Many intellectual persons devoutly believe in spiritualism as a religion. This is evidence of neither insanity nor incompetency. (14 Cal. Jur. 367; *In re Spencer*, 96 Cal. 448 [31 Pac. 453].) In the absence of proof of undue influence, importunity, or gross advantage secured, neither the lapse of memory, nor extreme age, which is not shown to have affected the understanding or ability to transact business, will suffice to avoid a deed which otherwise appears to have been duly executed and valid. (1 Alexander on Wills, 458, secs. 340–342; *Rogers* v. *Scott*, 28 Cal. App. 93 [151 Pac. 379]; *Johnson* v. *Studley*, 80 Cal. App. 538 [252 Pac. 638].)

 The respondents were neither in default for failure to pay the full contract price for the real property, nor for failure to pay it within the 30-day limit of time prescribed by the contract. The purchase price of the property was $16,500, one-half of which was represented by the note and mortgage, which were duly executed and delivered pursuant to contract. The balance was to be paid in cash to the trust company within 30 days from October 12th. The contract which was signed and accepted by the grantor acknowledged the deposit of $500 upon the purchase price, which was credited by agreement as a part of the broker's commissions. The balance of the purchase price, to wit, $7,762 was paid to the trust company by the respondents on November 13th. By the terms of this agreement the purchasers were given 30 full days in which to complete the contract. The thirtieth day fell upon Sunday, November 11, 1923, which was also Armistice Day, a statutory holiday. Section 10 of the Political Code provides: "When . . . the 11th day of November falls upon Sunday, the Monday fol-

lowing is a holiday.'' It follows that since Armistice Day chanced to fall upon Sunday in the year 1923, the following Monday, November 12th became a holiday. The respondents therefore were entitled to the following day in which to fulfill their contract. The general rule for computing time within which a contract may be performed is to exclude the final day when it chances to fall upon a Sunday or a holiday, and include the succeeding business day. (26 R. C. L. 749, sec. 23.) Section 11 of the Civil Code provides: ''Whenever any act . . . is appointed by law *or contract* to be performed upon a particular day, which day falls upon a holiday, it may be performed upon the next business day with the same effect as if it had been performed upon the day appointed.'' (*Mox Inc.* v. *Leventhal,* 89 Cal. App. 253 [264 Pac. 562].) It follows that since the performance of the agreement by the respondents was completed on November 13th, which was within the time specified in the contract, the heirs of the deceased had no authority to rescind the contract, as they attempted to do November 17th, by notifying the title company to that effect.

The appellant contends that the complaint fails to allege, and that the evidence and findings fail to support a necessary showing of the value of the property or the adequacy of the consideration for the conveyance. Paragraph IV of the complaint, however, did allege: ''That the said sum of $16,500 mentioned in said agreement for the purchase of said land is a just, fair and adequate consideration and price for the land herein described.'' In the absence of a demurrer, this was a sufficient allegation of the value of the land, if indeed any allegation of value was necessary at all. The first finding of fact adopted by the court was: ''That all the allegations of the plaintiff's complaint are true.'' The fourth finding of fact was: ''That the denials contained in said defendant's answer in paragraph four are untrue.'' The court thus determined by the foregoing general finding that $16,500 was a just, fair, and adequate consideration for the purchase of the land. It is also specifically found that defendant's denial of these facts was untrue. This was a sufficient finding of facts as to the value and the adequacy of consideration. In 24 California Jurisprudence 973, section 206, the author says: ''Unless preju-

dice results from a failure to find more specifically, a general finding of the ultimate facts is all that is required, as such a finding is equivalent to a specific finding as to each material allegation to which it refers. Thus it is ordinarily sufficient to find that all of the allegations of a pleading are or are not true. (See, also, 24 Cal. Jur. 986, sec. 214, and cases there cited.) The record discloses evidence of the value of the land which is not disproportionate to the contract price. Mr. Kelliher, a real estate broker, testified that it was worth $275 per front foot, or $18,700 for the entire tract. The requirement of an allegation and proof of adequate consideration in an action for specific performance does not mean that the contract price shall necessarily measure up to the highest market value of the property, but merely that it is a substantially just and fair valuation under all the circumstances of the case. (23 Cal. Jur. 442.) It cannot be said that the contract price of $16,500, as a matter of law, was unjust or inadequate.

It was, however, unnecessary in the present case to allege or prove the value of the property or the adequacy of consideration. This is an action under section 3380 of the Civil Code, to obtain the delivery of a deed wrongfully withheld by the depositary after the termination of an escrow, and is not an action for specific performance. In 10 California Jurisprudence, at page 594, it is said: " . . . if the depositary refuses to deliver the instruments after performance of the conditions, the grantee may bring an action for specific delivery of personal property, which technically is neither an action in claim and delivery nor for specific performance." (See sec. 3380, Civ. Code; *Harrison* v. *Woodward*, 11 Cal. App. 15 [103 Pac. 933]; *Danziger* v. *Benson*, 175 Cal. 565 [166 Pac. 313].) If the escrowholder wrongfully delivers the property to a third person, the grantee may bring the action against him without joining the escrow-holder or the grantor. (*Feisthamel* v. *Campbell*, 55 Cal. App. 774 [205 Pac. 25].) If the grantor and the depositary wrongfully convert the property of the plaintiff, they may be joined as defendants. (10 Cal. Jur. 595; *Trask* v. *Garza*, 51 Cal. App. 739 [197 Pac. 807].)

Section 1057 of the Civil Code, defines an escrow as follows: "A grant may be deposited by the grantor with a third person, to be delivered on performance of a condi-

tion, and, on delivery by the depositary it will take effect. While in possession of the third person, and subject to condition, it is called an escrow." It will be observed that it is only while the instrument is subject to the conditions imposed that the deposit will be deemed to be an escrow. When the conditions upon which the deposit of the instrument have been fully performed, the relationship of the interested parties automatically changes and the depositary is then deemed to hold the instrument as a trustee for the party entitled thereto. In the case of *Shreeves* v. *Pearson,* 194 Cal. 699, 707 [230 Pac. 448, 451], it is said: " . . . whenever the conditions attending the escrow have been so far performed that the transaction which has called the escrow into being becomes complete the nature of this dual agency changes to an agency not for both, but for each of the parties to said transaction in respect to those things placed in escrow to which each has thus become entitled." So, also, in the case of *Feisthamel* v. *Campbell, supra,* at page 781, the court quotes with approval from 10 Ruling Case Law, at page 640, the following: " . . . upon the happening of the event or the performance of the condition upon which manual delivery should be made by the depositary to the grantee, although not in fact physically delivered to him, a deed theretofore in escrow becomes *ipso facto* the deed of the grantee in whom the title vests, and that thenceforth the depositary or holder is regarded as the mere agent or trustee of the grantee."

In the present case it becomes necessary to determine from the escrow instructions and from the evidence what specific acts were necessary to fulfill the escrow trust and entitle the grantees to the delivery of their deed. Was the depositary the trustee for both parties to this transaction, including the acts of indorsing upon the note the accumulated interest to the time of the close of the escrow; to apportion the taxes and the rent, and to furnish the guaranty certificate of title, or was the depositary the agent for both parties merely for the acceptance of the purchase price of the land together with the note and mortgage and the holding and delivery of the grantor's deed of conveyance? It seems reasonable to assume that for the performance of those acts by the depositary in which the grantor alone was interested, the depositary was his agent only, and not a

trustee for the benefit of the purchasers. It is evident from the escrow instructions that the grantor intended to waive interest on the note from the date of its execution to the time of the termination of the escrow, and he therefore directed the depositary to indorse upon the note, as paid, all interest to that date. A failure to perform this clerical act does not harm the grantor, but entitles the purchasers to a claim against him for this small amount. So, also, the instructions directed the prorating of rent, with the evident intent of crediting the purchasers with the rent due or paid after the closing of the escrow. Assuming that the escrow was closed upon the depositing of the note and mortgage and the payment of the balance of the purchase price on November 13th, the purchasers would be entitled to a credit of one-half of $40 rent which was paid for the month of November. But the evidence does not show that any rent was deposited with the holder of the escrow for distribution. It seems absurd to hold that a grantor could defeat an escrow by his failure to deliver or account for rental which he had agreed to pay the purchaser. This, also, is a matter of which none but the purchasers could complain. The taxes for the fiscal year were also to be prorated. But these taxes became a lien upon the property and were chargeable to the purchasers, who would have a valid claim against the grantor for the proportion thereof which accrued before the completion of the escrow. This obligation was due from the grantor, and he may not complain because his depositary failed to perform the clerical duty of apportioning the taxes. No tax money was deposited, and none was to be distributed between the parties. The grantor merely owed the purchasers the amount of taxes which would have accrued to the time of the completion of the escrow. So far as the furnishing of a guaranty certificate of title is concerned, that, also, is a matter of which the purchasers alone could complain. In truth, the escrow instructions were not conditioned upon the actual furnishing of such a certificate. However, the record seems to indicate that the certificate was in fact prepared and ready to deliver. Mr. Cate, an employee of the Title Guarantee & Trust Company, testified that the company was engaged in the business of furnishing guaranty certificates of title in connection with

which business they maintained an escrow department for handling transactions for the sales of properties. He also said that all of the documents involved in this transaction were deposited with his company. It appears that the respondent F. M. Law, about October 26, 1923, received a letter from the trust company regarding some flaw which had been discovered in the title to the property, and he was requested to waive this flaw in writing. Mr. Law testified: ''I investigated it, and inquired around, and the seller offered to put up a bond to protect me against that defect in the title; . . . After investigating the matter and being assured this title could be protected, I attached my check (for the cash payment on the purchase price of the land) to the waiver (of the defect of title) and the letter that they wrote me, and handed it back to Mr. Baker in the escrow office. . . . The letter stated that the escrow was approximately ready to close (and demanded that I) give them this check to close the escrow. . . . I delivered the check, the waiver and the letter.'' Neither the purchase price, nor the note and mortgage were ever returned or even tendered to the respondents. This appears to furnish substantial evidence to support the findings of the court to the effect that the respondents had fully performed every requirement of the escrow contract on their part, and that the escrow was terminated, thus entitling them to the delivery of their deed of conveyance from the depositary. The fact that the grantor subsequently died before the actual manual delivery of the instrument does not defeat the grantees of their right to the possession of their deed of conveyance. (*Bostwick* v. *McEvoy*, 62 Cal. 496.)

The decree, however, quieted title in the respondents regardless of the mortgage lien for the balance of the purchase price to which the grantor was entitled. Both the contract of sale and the escrow instructions provided for this lien in favor of the grantor. This was erroneously omitted by the trial court. The judgment is therefore modified so as to quiet title in the respondents, subject however, to a first mortgage lien in favor of the grantor and his heirs and assigns to secure the promissory note for the sum of $8,250 executed by the respondents October 15, 1923, according to the terms and conditions therein contained.

With this amendment the judgment is affirmed. Respondents will recover their costs.

Koford, P. J., and Nourse, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 5, 1928.

All the Justices present concurred.